651 So.2d 1060 (1995)
MERCHANTS AND FARMERS BANK OF KOSCIUSKO, MISSISSIPPI
v.
STATE of Mississippi ex rel. Mike MOORE, Attorney General, and Pete Johnson, Auditor of Public Accounts, for the Use and Benefit of Rankin County, Mississippi.
No. 92-CA-00019-SCT.
Supreme Court of Mississippi.
March 9, 1995.
George Dorrill, Thornton Guyton Dorrill & Pettit, Kosciusko, for appellant.
Michael C. Moore, Atty. Gen., Larry E. Clark, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
BANKS, Justice, for the Court:
This is a dispute between the State of Mississippi and Merchants & Farmer's Bank regarding the rental proceeds in the hands of the bank. The dispositive issue is whether the bank was required to give notice to the borrower before it could take possession of the rental property under the terms of the security agreements. We hold that no notice was required and that the proceeds are therefore not subject to the garnishment. Accordingly, we reverse and render.

*1061 I.
As collateral for a $2.1 million loan, Irl Dean Rhodes pledged Colonial Shopping Center in Jackson, Mississippi, and its rents, pursuant to the combination of a deed of trust and security agreement and an assignment of leases. The agreement provided for the collection of interest, the principal amount, escrow account, attorney fees, and all other reasonable expenses including, but not limited to, payment of insurance on the secured property. The security agreement also set forth the bank's and Rhodes' obligations and rights in the event of a default. The loan was subsequently renewed on several occasions, with the last time being in May of 1991.
Some time after the May renewal of the loan, the bank learned that Rhodes was insolvent when he failed to pay the insurance on the shopping center, as required under the contract, and that his net worth was substantially less than when the loan was renewed. In October 1991, the Bank discovered that the State had a $100,000 judgment against Rhodes when it (the bank), as the holder of Rhodes' escrow funds and rental accounts, was served with writs of garnishment. The Bank also discovered that Georgia Federal Bank and Omni Bank of Mantee also had judgments against Rhodes in the amounts of $1,581,000 and $1,199,175.87 respectively.
In light of these judgments against Rhodes, his insolvency and the writs of garnishment the Bank deemed itself insecure and on November 5, 1991, notified Rhodes telephonically and by letter that it was accelerating the debt and taking possession of the shopping center. The Bank then took possession of the shopping center, commenced foreclosure proceedings and notified the shopping center tenants of all the changes. The Bank also notified Wideman-LaFoe, the management company which collected the rents from the shopping center tenants, that it would be taking possession of the shopping center and that all rents collected thereafter should be turned over to the Bank instead of Rhodes.
On November 7, 1991, the shopping center tenants were issued writs of garnishment by the State. The bank subsequently filed a motion to quash the writs of garnishments against it and the tenants of the shopping center in the Rankin County Chancery Court. The bank claimed that it had a lien against the rental income from the shopping center tenants by virtue of the terms of the Deed and Trust and the Assignment of Leases. In response, the State claimed that the bank did not have a lien or liens against the rents superior to lien of the State pursuant to its judgment against Rhodes.
At trial, the Rankin County Chancery Court, overruling the motion to quash, found the bank guilty of laches and that the Deed of Trust required 30 days notice prior to taking possession. The court held that the State was entitled to the rents of the shopping center from the time the writs were served until the time of the Bank could legally take possession, which, as the court construed the deed of trust and assignment, was 30 days. The bank perfected an appeal to this court.

II.

A.
The State's sole argument is that the trial court was correct in concluding that the bank could not take possession without first giving Rhodes 30 day notice. The Bank argues that the chancery court's holding is based upon an erroneous interpretation of the deed of trust and assignment. We agree with the bank.
A court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous. Humble Oil & Refining Co. v. Standard Oil Co. (Ky.), 229 F. Supp. 586, (D.C.Miss. 1964) reversed 363 F.2d 945 (5th Cir.Miss. 1966), certiorari denied 385 U.S. 1007, 87 S.Ct. 714, 17 L.Ed.2d 545 (1967). The pertinent terms of the contract in this case are as follows:
[Introductory Paragraph]
If debtor shall pay said indebtedness promptly when due and shall perform all covenants made by the Debtor, then this conveyance shall be void and of no affect. If Debtor shall be in default as provided in Paragraph 9, then in that event, the entire *1062 indebtedness, together with all interest accrued thereon, shall, at the option of the Secured Party, be and become at once due and payable without notice to Debtor, and Trustee shall, at the request of Secured Party, sell the Property conveyed, or a sufficiency thereof, to satisfy the indebtedness at public outcry to the highest bidder of cash. (Emphasis Supplied).
[Paragraph 7]
7. As additional security Debtor hereby assigns to Secured Party all rents accruing on the Property. Debtor shall have the right to collect and retain the rents as long as Debtor is not in default as provided in Paragraph 9. In the event of default, Secured Party in person, by an agent or by a judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and collect the rents. (Emphasis Supplied).
[Paragraph 8]
8. This Deed of Trust (indenture) may not be assumed by any buyer from the Debtor. Any attempted transfer of any interest in this property (including but not limited to possession) will constitute a default and Secured party may accelerate the entire balance of the indebtedness.
If Secured party elects to exercise the option to accelerate, Secured party shall send Debtor notice of acceleration by certified mail. Such notice shall provide a period of thirty days from the date of mailing within which Debtor may pay the indebtedness in full. If Debtor fails to pay such indebtedness prior to the expiration of thirty days, Secured Party may, without further notice to Debtor, invoke any remedies set forth in this Deed of Trust.
[Paragraph 9]
9. Debtor shall be in default under the provisions of this Deed of Trust if Debtor (a) shall fail to comply with any of Debtor's covenants or obligations contained herein, (b) shall fail to pay any of the indebtedness secured by, or any installment thereof or interest thereon, as such indebtedness, installment or interest shall be due by contractual agreement or by acceleration, (c) shall become bankrupt or insolvent or be placed in receivership, (d) shall, if a corporation, a partnership or an unincorporated association be dissolved voluntarily or involuntarily, or (e) if Secured Party, in good faith deems itself insecure and its prospect of repayment seriously impaired.
The terms Deed of Trust clearly do not explicitly require notice except in the instance of an attempted transfer by the debtor of the secured property. Furthermore, the assignment of leases, at clause (b) under the section entitled "Terms and Conditions" states in pertinent part:
(b) Upon or at any time after such default, Assignee may at its option without notice and without regard to the adequacy of the security, either in person or by agent, with or without bringing any action or proceeding, or by receiver appointed by a court, take possession of the premises described in the Leases and hold, manage, lease and operate the same on such terms and or such period of time as the Assignee may deem proper... . (Emphasis Supplied)
Thus, in addition to the deed of trust not explicitly requiring notice of acceleration in the event of a default, the assignment of leases does explicitly state that notice is not required before the bank can take possession where there has been a default.
Here, Rhodes defaulted on the loan when he became insolvent and when he failed to pay the insurance on the shopping center. Because of this default, the bank was entitled to accelerate the loan and take possession without notice as set forth by the terms of the deed of trust and security agreement and the assignment of leases.
The State's argument that the clause in the deed of trust regarding notice, which appears as a part of paragraph 8, applies to all of the provisions of the document and is not a part of paragraph 8, but merely an unnumbered paragraph which happened to be placed in between paragraph 8 and 9 is without merit. Any rational reading of the instrument reveals that this clause is clearly part of paragraph 8 and merely expands upon the Bank's duties and rights in the event of a attempted transfer by the debtor. The introductory paragraph of the Deed of *1063 Trust unambiguously provides that in the event of default, the indebtedness to the Bank becomes payable at once without notice. Thus, the notice clause in paragraph 8 serves only to distinguish acceleration based on default from acceleration based on transfer. Paragraph 7, which speaks to the banks entitlement to take possession of the property in the event of default, does not contain a requirement of notice.

B.
As the bank correctly asserts, the chancery court's application of the doctrine of laches in this case is erroneous because there is no evidence in the record which indicates that a delay, if we assume that there was one, resulted in any injustice or disadvantage to the State.
Before laches can be invoked to bar litigation, the following three independent criteria must be satisfied: (1) delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. Allen v. Mayer, 587 So.2d 255 (Miss. 1991). See Also Vanlandingham v. Meridian Creek Drainage Distr., 191 Miss. 345, 2 So.2d 591 (1941).
In the instant case, the chancery court reasoned that laches was applicable because the Bank, being fully aware of Rhodes' financial situation by virtue of the vast amount of publicity surrounding Rhodes' insolvency and his financial statements, waited until the State made diligent application of its rights before asserting its (the Bank) claim to the rents. Thus, the chancellor concluded, the Bank should have acted sooner than it did.
This Court has held that time is only one element of laches and that there must be some other element of change in the conditions and relations of the parties, or intervention of the rights of third persons to the extent that it would be inequitable to permit the party to assert his rights. Smith v. Smith, 211 Miss. 481, 52 So.2d 1 (1951). In other words, "[d]elay is not laches unless it results in hardship to another." Clement v. R.L. Burns Corp., 373 So.2d 790, 797 (Miss. 1979). The State has not shown any harm resulting from the Bank's alleged delay. The fact that the bank acted two days, rather than two months or two years before the State's writs of garnishment is of no moment. Thus, we find that the chancery court erred in its application of the doctrine of laches.

III.
For the foregoing reasons the judgment of the chancery court is reversed and rendered.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.