S07A1672. GEORGIA REHABILITATION CENTER, INC.
v. NEWNAN HOSPITAL.

(658 SE2d 737)

MELTON, Justice.

Georgia Rehabilitation Center, Inc. ("GRC") and Newnan Hospital ("Newnan") are co-owners of Coweta Rehabilitation Services, LLC ("CRS"), a limited liability company created to provide physical therapy, rehabilitation, and wellness services in Coweta County. When CRS ran into financial trouble, Newnan unilaterally requested that the Superior Court of Coweta County judicially dissolve CRS pursuant to OCGA § 14-11-603. GRC moved to compel arbitration on the issue of CRS's dissolution. The trial court denied GRC's motion to compel arbitration and, instead, appointed a receiver to oversee CRS during the pendency of further proceedings. GRC appeals, contending that the trial court erred in denying its motion to compel arbitration and in appointing a receiver. For the reasons set forth below, we affirm.

1. GRC contends that the trial court erred in denying its motion to compel arbitration, arguing that the Operating Agreement for CRS required that the issue of CRS's dissolution be handled by an arbitrator. The trial court was authorized, however, to determine whether the issue of CRS's dissolution was to be handled by a court or by an arbitrator, unless Newnan and GRC clearly and unmistakably provided otherwise in the Operating Agreement. *AT&T Technologies v. Communications Workers of America*, 475 U. S. 643 (II) (106 SC 1415, 89 LE2d 648) (1986); *Bryan County v. Yates Paving & Grading Co.*, 281 Ga. 361 (638 SE2d 302) (2006).

The Operating Agreement does not provide that an arbitrator must decide issues of arbitrability, but does provide in relevant part that "[a]ny dispute, controversy or claim arising out of or in connection with, or relating to, this Operating Agreement or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration." Thus, the question to be resolved by the trial court here was whether the judicial dissolution of CRS was a claim arising out of, in connection with, or relating to CRS's Operating Agreement.

With respect to the issue of dissolution, the Operating Agreement provides that dissolution of CRS pursuant to the agreement occurs "only upon . . . [(1)] Dissolution Notice from a Member pursuant to [certain terms of the Operating Agreement] . . . [(2)] the unanimous written agreement of all Members . . . or [(3)] the bankruptcy or dissolution (a 'Withdrawal Event') of a Member." It is undisputed that none of these aforementioned events formed the basis for the dissolution of CRS in this case. Rather, the dissolution proceedings were

commenced by Newnan pursuant to OCGA § 14-11-603, which provides an independent legal mechanism for the judicial and administrative dissolution of a limited liability company. Because the manner of dissolution involved here did not arise out of or relate to the terms of the Operating Agreement, the trial court properly determined that the issue of CRS's judicial dissolution did not have to be submitted to arbitration.[1] *Bryan County*, supra, 281 Ga. at 363.

2. GRC further argues that the trial court erred in appointing a receiver to oversee CRS during the pendency of further proceedings. While it is true that the power of appointing a receiver should be prudently and cautiously exercised and should not be resorted to except in clear and urgent cases (OCGA § 9-8-4), the grant or refusal of a receivership "is a matter addressed to the sound legal discretion of the [trial] court, the exercise of which will not be interfered with [on appeal] unless such discretion be manifestly abused." *Friedlander v. Friedlander Bros.*, 175 Ga. 477 (4) (165 SE 426) (1932).

The record reveals that the parties, as 50/50 owners of CRS, could not agree about the management of CRS and its financial affairs. Even when Newnan hired accountants to conduct an audit of CRS due to the company's alleged depleting assets, no meaningful accounting could be done because GRC and Newnan provided conflicting, incomplete, and inconsistent information to the accountants. Moreover, as pointed out in the trial court's order, the parties "agreed that the Court would dispose of the[ir] respective requests for relief . . . which included a request for the appointment of a Receiver . . . on the briefs submitted." Under these circumstances, we cannot conclude that the trial court abused its discretion in appointing a neutral receiver to manage the affairs of CRS during the pendency of further proceedings. See, e.g., *Black v. Graham*, 266 Ga. 154 (2) (464 SE2d 814) (1996).

3. In light of our holdings in Divisions 1 and 2 that the trial court did not err in refusing to submit the issue of CRS's judicial dissolution

---

[1] Contrary to the dissent's analysis, the Operating Agreement does not govern dissolution proceedings initiated pursuant to OCGA § 14-11-603. In fact, the Operating Agreement expressly *limits* the parameters within which dissolution may be sought pursuant to its terms. Here, once the trial court determined that dissolution pursuant to OCGA § 14-11-603 was not covered by the dissolution terms of the Operating Agreement, it then could properly look to the terms of the judicial dissolution statute to determine if dissolution was otherwise available. Even though, in conducting a dissolution pursuant to OCGA § 14-11-603, the statute requires the court to look to the substantive terms of the Operating Agreement to see if the LLC can still function effectively, this *statutory* requirement does not change the fact that these dissolution proceedings are an exclusive outgrowth of that statute rather than the Operating Agreement, and the fact that arbitration was not required here.

to arbitration, and that the trial court did not abuse its discretion in appointing a receiver, we need not address GRC's remaining contentions.

*Judgment affirmed. All the Justices concur, except Sears, C. J., and Carley, J., who dissent.*

SEARS, Chief Justice, dissenting.

The trial court erred in denying Georgia Rehabilitation Center, Inc.'s ("GRC") motion to compel arbitration. The parties agreed in writing that "[a]ny dispute, controversy or claim arising out of or in connection with, or relating to, this Operating Agreement or any breach or alleged breach hereof shall, upon request of any party involved, be submitted to, and settled by, arbitration." A dispute arose between GRC and Newnan Hospital regarding the limited liability company ("LLC") formed by the Articles of Organization and governed by the Operating Agreement. Newnan filed a lawsuit seeking dissolution of the LLC, and GRC formally requested that the matter be submitted to arbitration. Thus, as the Court's opinion correctly recognizes, the central issue to be decided is whether the dispute is one "arising out of, in connection with, or relating to [the] Operating Agreement."[2]

Newnan claims it is not, despite the complaint's explicit references to "[t]he Operating Agreement."[3] Newnan contends, and the majority agrees, that because Newnan invoked OCGA § 14-11-603 (a) as a basis for dissolution, its dispute with GRC does not arise out of the Operating Agreement, is not connected with it, and does not relate to it. However, OCGA § 14-11-603 (a) authorizes dissolution of an LLC only where "it is not reasonably practicable to carry on the business *in conformity with* the articles of organization or *a written operating agreement.*" (Emphasis supplied.) In addition, Newnan's complaint expressly requested that the LLC be dissolved "[p]ursuant to the provisions of O.C.G.A. § 14-11-603 . . . *on terms that are in accordance with . . . the provisions of the Operating Agreement between the parties.*"[4]

I do not see how a decision maker, be he a judge or an arbitrator, can decide whether it is "reasonably practicable" to carry on the business "in conformity with" the existing Articles of Organization and Operating Agreement without analyzing those two documents in detail and determining the legal effect of many of their provisions in

---

[2] Maj. opinion, supra at 335.
[3] Complaint ¶¶ 22-23.
[4] Complaint ¶ 23 (emphasis supplied).

light of current circumstances.[5] Moreover, no decision maker can award Newnan the relief it explicitly requested in the complaint without following much the same process. Consequently, Newnan's complaint for dissolution presents a "dispute, controversy or claim" "relating to" or "connect[ed] with" the Operating Agreement.

Had the parties agreed to arbitrate only disputes "arising out of . . . this Operating Agreement or any breach or alleged breach hereof," I might agree with the majority's analysis and holding. But Newnan signed a much broader agreement. Newnan agreed to arbitrate not merely claims arising out of a breach or alleged breach of the Operating Agreement, but "[a]ny dispute, controversy or claim" "relating to" or "in connection with" the Operating Agreement.[6] In my view, this language is broad enough to include the present claim for dissolution of the LLC, and Newnan's recitation of a statutory basis for dissolution does not render the matter any less related to, or connected with, the Operating Agreement.[7] Accordingly, I dissent.

I am authorized to state that Justice Carley joins in this dissent.

DECIDED MARCH 17, 2008.

*Parks, Chesin & Walbert, A. Lee Parks, Larry H. Chesin*, for appellant.

*Tisinger Vance, J. Thomas Vance, Charles D. Mecklin, Jr.*, for appellee.

---

[5] OCGA § 14-11-603 (a).

[6] Compare *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395, 398 (87 SC 1801, 18 LE2d 1270) (1967) (noting broad scope of arbitration clause in consulting agreement requiring parties to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof"); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 5 (103 SC 927, 74 LE2d 765) (1983) (same for arbitration clause in construction contract).

[7] See *Southland Corp. v. Keating*, 465 U. S. 1, 15, n. 7 (104 SC 852, 79 LE2d 1) (1984) (holding arbitration clause in franchise agreement applicable to "any controversy or claim arising out of or relating to this Agreement or the breach hereof" required arbitration of statutory claims for violation of disclosure requirements imposed by California Franchise Investment Law).