A10A1495. SIMMONS FAMILY PROPERTIES, LLLP
v. SHELTON et al.

(705 SE2d 258)

PHIPPS, Presiding Judge.

This is an appeal from the trial court's judgment, after a bench trial, granting a petition to dissolve a limited liability company pursuant to OCGA § 14-11-603 (a) and denying the respondent's motion to stay the proceeding and compel arbitration. For the reasons that follow, we affirm.

DDE Properties, LLC, is a limited liability company formed in 2005 and owned by Donnie Shelton, Edward G. Johnson, and Simmons Family Properties, LLLP ("SFP"). Under DDE's operating agreement, each of its members owned a one-third economic and voting interest in DDE. Danny Simmons signed the operating agreement on behalf of SFP.

In 2008, Shelton and Johnson filed a petition in superior court to dissolve DDE. They brought the action pursuant to OCGA § 14-11-603, which provides, in relevant part, that on application by or for a member of a limited liability company, the court may decree dissolution of the company whenever it is not reasonably practicable to carry on the company's business in conformity with the articles of

organization or a written operating agreement. In their petition, Shelton and Johnson alleged that it was not reasonably practicable to carry on the company's business because DDE's sole manager, Simmons,[1] had never called an annual meeting as required by DDE's operating agreement,[2] and when Shelton and Johnson attempted to call a special meeting as provided in the operating agreement for the purpose of dissolving the company,[3] Simmons did not attend; thus, the members were unable to achieve a quorum.[4]

SFP filed an answer opposing the petition, a counterclaim, and a motion to stay the petition and compel arbitration ("motion to compel arbitration"). The trial court denied the motion to compel arbitration and granted the petition for dissolution. SFP appeals.

1. SFP contends that the trial court erred in denying its motion to compel arbitration, arguing that the operating agreement for DDE required that the request for dissolution be handled by an arbitrator. We disagree.

> The question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination. The standard of review of a trial court's ruling on a motion to compel arbitration is whether the trial court was correct as a matter of law. The construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review.[5]

The operating agreement at issue in this case provides, in pertinent part:

> 15.16. *Arbitration*. Any dispute, controversy or claim arising out of or in connection with, or relating to this Agreement

---

[1] Simmons also served as manager of Simmons Family Investments, LLLC, the general partner of SFP.

[2] 7.1 *Annual Meeting*. The annual meeting of the Members shall be held at such time and place as shall be determined by the Manager commencing with the first year after the formation of the Company, for the purpose of the transaction of such business as may come before the meeting. The Manager may specify in writing to the Members prior to any special meeting of the Members held within the year that such special meeting shall be in lieu of the annual meeting.

[3] "7.2 *Special Meetings*. Special meetings of the Members, for any purpose or purposes, unless otherwise prescribed by statute, may be called by any Manager or by any Member or Members holding at least 10% of the Voting Interest."

[4] "7.7 *Quorum*. Members holding Super Majority Interests (80%), represented in person or by proxy, shall constitute a quorum at any meeting of Members."

[5] *Wells Fargo Auto Finance v. Wright*, 304 Ga. App. 621 (698 SE2d 17) (2010) (footnote omitted).

or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration in the City of Dalton, State of Georgia, pursuant to the commercial arbitration rules then in effect of the American Arbitration Association.

Thus, the question to be resolved by the trial court was whether the request for judicial dissolution of DDE was a claim arising out of, in connection with, or relating to the operating agreement or any breach or alleged breach thereof.

Regarding dissolution, Section 14.1 (b) of the operating agreement provides in pertinent part:

[I]f a Member or Members owning Voting Interests which in the aggregate constitute not less than two-thirds of the Voting Interest vote to dissolve the Company at a meeting of the Members of the Company, then all of the Members shall agree in writing to dissolve the Company as soon as possible . . . thereafter.

In their efforts to dissolve the company, Shelton and Johnson initially sought to do so as provided in the operating agreement. When those efforts failed, they commenced the underlying dissolution proceeding pursuant to OCGA § 14-11-603. This Code section provides an independent legal mechanism for the judicial and administrative dissolution of a limited liability company.[6] The operating agreement in this case expressly limits the parameters within which dissolution may be sought pursuant to its terms, thus it does not govern dissolution proceedings initiated pursuant to OCGA § 14-11-603.[7] Accordingly, the trial court properly looked to the terms of the judicial dissolution statute to determine if dissolution was otherwise available.[8]

Even though . . . [OCGA § 14-11-603] requires the court to look to the substantive terms of the [o]perating [a]greement to see if the [company] can still function effectively, this *statutory* requirement does not change the fact that these dissolution proceedings are an exclusive outgrowth of that statute rather than the [o]perating [a]greement.[9]

---

[6] *Ga. Rehab. Center v. Newnan Hosp.*, 283 Ga. 335, 336 (1) (658 SE2d 737) (2008).
[7] See id. at 336 (1), n. 1.
[8] Id.
[9] Id.

Because the manner of dissolution involved here — initiated pursuant to OCGA § 14-11-603 — did not arise out of, in connection with or relate to the terms of the operating agreement or any alleged breach thereof, the trial court properly determined that the issue of DDE's dissolution need not be submitted to arbitration.[10]

2. SFP contends that the trial court erred in finding that it was not reasonably practicable for DDE to carry on its business in conformity with the operating agreement.[11] SFP argues that dissolution is not allowed where, as here, the company was carrying on its business functions in accordance with the operating agreement, but there was a technical violation of the agreement regarding meetings, and two of the members simply wanted to rewrite the agreement. According to SFP, Shelton and Johnson did not object to the manner in which the business was being conducted until Simmons demanded that Shelton and Johnson remove a lien they impermissibly allowed to be placed on property owned by DDE in favor of a third party.

The operating agreement contains the following provisions, in pertinent parts, regarding meetings. The annual meeting of the members shall be held at such time and place as shall be determined by the manager, beginning with the first year after the formation of the company, for the purpose of transacting business; the manager may specify in writing to the members prior to any special meeting held within the year that such special meeting shall be in lieu of the annual meeting.[12] Special meetings may be called by any manager or by any members holding at least ten percent of the voting interest.[13] Unless waived as herein provided, written notice stating the time and place of the meeting and the purpose of the meeting shall be delivered a certain number of days before the meeting by the manager or persons calling the meeting to each person eligible to vote at the meeting.[14] If all of the members shall meet at any time and place and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting any lawful action may be taken.[15] Members holding super-majority interests (80%), represented in person or by proxy, shall constitute a quorum at any meeting of members.[16] If a quorum is present, the affirmative vote of members holding a super-majority interest (80%) of the members present shall be the act of the

---

[10] Id. at 336 (1).
[11] See OCGA § 14-11-603 (a).
[12] Section 7.1.
[13] Section 7.2.
[14] Section 7.4.
[15] Section 7.5.
[16] Section 7.7.

members.[17] The manager shall preside at every meeting, and in the absence of the manager, the members shall elect the presiding officer.[18] The manager holds office until the next annual meeting of the members or until his successor has been elected and qualified.[19]

Viewed most favorably to the trial court's findings,[20] the evidence shows the following. As of the date of the trial (May 2009), no notices of annual meetings had ever been sent or received after DDE's formation in February 2005; annual meetings were requested but not called or held (the evidence conflicted as to whether one such meeting was held in May 2006); while some special meetings were held to resolve specific matters, no special meetings were held in lieu of annual meetings or for the purpose of selecting a manager; the court found no conclusive evidence that the members had consented to informal meetings as provided in the operating agreement; when Shelton and Johnson scheduled a special meeting, Simmons's attorney responded that the meeting would not be held, Simmons did not attend, and Shelton and Johnson were unable to achieve a quorum; Johnson made several attempts to hold meetings for the purpose of selecting a manager, but every such attempt was "turned down."

In granting the petition for dissolution, the court noted that the lack of properly-noticed annual meetings was "more than a formality," as such meetings are the primary venue in the operating agreement for non-managing members to have their voices heard. The court further held that the lack of notice impeded the members' ability to protect their investments by contributing to the direction of the company. The court found that the members of DDE were effectively deadlocked over several issues and that the situation appeared unlikely to change.

Based upon the evidence presented, the trial court did not err in finding that it was not reasonably practicable for DDE to carry on business in conformity with the operating agreement, and did not err in granting the petition to dissolve the limited liability company.[21]

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED NOVEMBER 30, 2010 —
RECONSIDERATION DENIED DECEMBER 13, 2010 — 

---

[17] Section 7.8.

[18] Section 7.12.

[19] Section 5.4.

[20] See *Ervin v. Turner*, 291 Ga. App. 719, 720, 725-726 (10) (662 SE2d 721) (2008) (on appeal from entry of judgment in a bench trial in which court granted, inter alia, a petition for dissolution of LLC, evidence is viewed in light most favorable to trial court's findings of fact); *McDilda v. Norman W. Fries, Inc.*, 278 Ga. App. 51 (628 SE2d 195) (2006) (a trial court's factual findings in a bench trial must be deferred to when supported by any evidence).

[21] See OCGA § 14-11-603 (a).

*Robert G. McCurry*, for appellant.

*Minor, Bell & Neal, Dennis D. Watson, Brian D. Wright*, for appellees.