WALLER, Chief Justice,
for the Court:
¶ 1. Gary Fordham, David Thompson, and Venture Sales, LLC, appeal from the order of the Forrest County Chancery Court dissolving Venture Sales pursuant to Mississippi Code Section 79-29-802 (Rev. 2009).[1] Because substantial evidence exists to support the chancellor’s determination, we affirm the judgment. Because the chancellor did not address winding up the company following dissolution, we remand the case to the chancery court to wind up the affairs of Venture Sales pursuant to Mississippi Code Sections 79-29-803 through 79-29-807 (Rev.2009).
FACTS AND PROCEDURAL HISTORY
¶ 2. Walter Ray Perkins owned 27.7 acres of land on Highway 42 in Petal, Mississippi. Sometime in the late 90s, Perkins was approached by Fordham and Thompson about a potential business venture involving this land.[2] Perkins, Ford-ham, and Thompson eventually agreed that Fordham and Thompson would acquire the 438 acres of land that adjoined Perkins’s land to the south; then, the parties would combine their respective land, along with some cash, and form a venture to develop the land.
¶ 3. After Fordham and Thompson purchased the 438 acres, Perkins contributed his land as well as $155,378.59 in cash to Venture Sales, an already-existing company in which Fordham and Thompson were partners. Fordham and Thompson contributed their land to Venture Sales, along with $1,459.12 in cash, each. The cash and land contributions were structured such that Perkins, Fordham, and Thompson each would own one-third of the company.
¶ 4. Following the contributions, the operating agreement of Venture Sales was revised to reflect the arrangement. The Restated Purpose of Venture Sales, set forth in Section 1.02 of the Restated Limited Liability Company Agreement for Venture Sales, LLC (“the operating agreement”), was stated as follows:
The purpose of the Company is to initially acquire, develop and sale [sic] commercial and residential properties near Petal, Forrest County, Mississippi and subsequently at other locations to be decided by the Company and to conduct any other lawful business, purpose, or activity as decided by the Members.
The language, “acquire, develop and sale [sic] ...” is the main issue in this dispute.
¶ 5. The parties signed the new operating agreement on February 18, 2000, and gave the agreement an effective date of January 1, 2000. At the time the company was formed, Perkins was working as an assistant coach for the Cleveland Browns, a professional football team, and was living in Ohio. Perkins stated at trial that he relied on Fordham and Thompson, who had experience in the mobile-home busi *913 ness, to devote their time and energy to the development of the Venture Sales property.
¶ 6. As of the beginning of this litigation, the property remained undeveloped and virtually unchanged. According to Ford-ham and Thompson, there are several causes, outside the members’ control, for the delay in development. However, during this time, Fordham and Thompson have successfully developed at least two other subdivisions with approximately 200 collective houses within twenty-five miles of the Venture Sales property.
¶ 7. In early 2009, Venture Sales negotiated an option contract for the sale of a portion of its land, however the contract expired before it closed. Also in 2009, Venture Sales listed its entire property for sale for $5.2 million, but the listing expired without a deal. Fordham requested the members’ approval to list the property for $3.5 million, but Perkins did not agree.
¶ 8. In February 2010, Perkins filed an application for judicial dissolution of Venture Sales. Following a trial, the chancellor found that, based on the property’s history, the company’s inability to get the required funding for development, and the uncertainty regarding the economic climate in the area, it was not reasonably practicable to carry on the business of Venture Sales. The chancellor therefore ordered the company dissolved. Fordham, Thompson, and Venture Sales now appeal.
ISSUES
¶ 9. Fordham and Thompson raise three issues on appeal:
I.Whether the chancellor erred as a matter of law in ordering the dissolution of a solvent limited liability company based on the application of one dissatisfied member.
II. Whether the chancellor erred by ordering the dissolution of Venture Sales because his judgment was not supported by substantial evidence, he abused his discretion, he was manifestly wrong, and his findings were clearly erroneous.
III. If the chancellor is affirmed in ordering the dissolution of Venture Sales, whether the chancellor erred in failing to order that a winding up of Venture Sales proceed pursuant to Mississippi Code Sections 79-29-803 through 79-29-807, with the Manager of Venture Sales being directed to proceed with winding up Venture Sales pursuant to these statutes.
¶ 10. While Fordham and Thompson present three issues for appeal, issues I and II address the same question — whether the chancellor erred in ordering the dissolution of Venture Sales. Accordingly, issues I and II will be analyzed together.
STANDARD OF REVIEW
¶ 11. On appeals from chancery court, this Court employs a limited standard of review. Corp. Mgmt. v. Greene County, 23 So.3d 454, 459 (Miss.2009). We review a chancellor’s decision for abuse of discretion. Estate of Davis v. O’Neill, 42 So.3d 520, 524 (Miss.2010). We will not disturb a chancellor’s factual findings “when supported by substantial evidence unless ... the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.” Id. (quoting Greene County, 23 So.3d at 459). This Court will affirm a chancellor’s decision when it is supported by substantial credible evidence. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997). Questions of law are reviewed de novo. Biglane v. Under the Hill Corp., 949 So.2d 9, 14 (Miss.2007).
*914 DISCUSSION
I. The chancellor’s judgment dissolving Venture Sales was supported by substantial evidence and was not an abuse of discretion.
¶ 12. Mississippi Code Section 79-29-802 (Rev.2009) allows a member of a limited liability company to apply to the chancery court for an order of dissolution of the company in certain circumstances. The chancellor may order dissolution of a limited liability company when:
(a) It is not reasonably practicable to carry on the business in conformity with the certifícate of formation or the limited liability company agreement; or
(b) The managers or the members in control of the limited liability company have been guilty of or have knowingly countenanced persistent and pervasive fraud or abuse of authority or persistent unfairness toward any member, or the property of the limited liability company is being misapplied or wasted by such persons.
Miss.Code Ann. § 79-29-802 (Rev.2009).
¶ 13. The chancellor determined that there was no fraud, abuse of authority, persistent unfairness, or waste of company property by any Venture Sales members. Accordingly, the chancellor’s decision to dissolve Venture Sales was solely because he determined it was “not reasonably practicable” for Venture Sales to carry on its business in conformity with its operating agreement. Miss.Code Ann. § 79-29-802(a) (Rev.2009).
¶ 14. The Mississippi Limited Liability Company Act (“MLLCA”) does not define “not reasonably practicable.” Furthermore, no Mississippi cases to date interpret what constitutes “not reasonably practicable” or “reasonable practicability.” In such a situation, we look to other jurisdictions that have considered the matter. Hood v. State, 17 So.3d 548, 555 (Miss.2009); Byrd v. The Miss. Bar, 826 So.2d 1249, 1252 (Miss.2002).
¶ 15. Several courts have addressed what constitutes “not reasonably practicable” in the context of judicial dissolution of a company. Judicial dissolution has been described as a remedy extreme in nature, and one that is to be granted sparingly. See In the Matter of the Dissolution of 151¡,5 Ocean Ave., LLC, 72 A.D.3d 121,129-130, 893 N.Y.S.2d 590 (N.Y.App.Div.2010); In re Arrow Inv. Advisors, LLC, 2009 WL 1101682, at *2 (Del.Ch.2009). In some cases, finding that it is “not reasonably practicable” for a company to continue operating requires a showing that the business “cannot continue ‘in accord with its ... operating agreement.’ ” 1545 Ocean Ave., 72 A.D.3d at 130, 893 N.Y.S.2d 590 (quoting Dunbar Group, LLC v. Tignor, 267 Va. 361, 593 S.E.2d 216, 219 (2004)); but see Kirksey v. Grohmann, 754 N.W.2d 825, 830 (S.D.2008) (ordering dissolution even though the business could continue despite the deadlock). Generally, dissolution under this standard does not require that a company’s purpose has been “completely frustrated.” PC Tower, Inc. v. Tower Ctr. Dev. Assoc., L.P., Civ. A. No. 10788, 1989 WL 63901, at *5 (Del.Ch. June 8,1989); Fisk Ventures, LLC v. Segal, Civ. A. No. 3017-CC, 2009 WL 73957, at *4 (Del. Ch. Jan. 13, 2009). Dissolution generally has been deemed appropriate when a company’s economic purpose is not being met, or when the company is failing financially. 1545 Ocean Ave., 72 A.D.3d at 130, 893 N.Y.S.2d 590; PC Tower, 1989 WL 63901, at *6; Fisk Ventures, 2009 WL 73957, at *5-6. At least one court has ordered the dissolution of a company that, while financially stable and with assets that exceeded its liabilities, was function *915 ing simply as a “residual, inertial status quo.” Haley v. Talcott, 864 A.2d 86, 96 (Del.Ch.2004). When a company “cannot effectively operate under the operating agreement to meet and achieve the purpose for which it was created,” dissolution has been allowed. 1545 Ocean Ave., 72 A.D.3d at 130, 893 N.Y.S.2d 590.
 ¶ 16. While no definitive, widely accepted test or standard exists for determining “reasonable practicability,” it is clear that when a limited liability company is not meeting the economic purpose for which it was established, dissolution is appropriate. See 1545 Ocean Ave., 72 A.D.3d at 130, 893 N.Y.S.2d 590; Kirksey, 754 N.W.2d at 828; Percontino v. Camporeale, No. BER-C-5-05, 2005 WL 730234, at *3 (N.J.Sup.Ct. March 24, 2005). In making this determination, we must first look to the company’s operating agreement to determine the purpose for which the company was formed. See 1545 Ocean Ave., 72 A.D.3d at 130, 893 N.Y.S.2d 590.
¶ 17. Venture Sales’ operating agreement states that the company’s purpose is “to initially acquire, develop and sale [sic] commercial and residential properties near Petal, Forrest County, Mississippi.” (Emphasis added.) At trial, Fordham admitted that the company was formed for the purpose of acquiring and developing property. Yet, more than ten years after Venture Sales was formed with Perkins as a member, the property remains completely undeveloped. Fordham and Thompson have offered a number of reasons why development has been delayed to this point.
¶ 18. In 2003, the Venture Sales property was annexed to the City of Petal, and in 2005 the property was rezoned to “planned unit development,” the zoning needed for development. Also in 2005, Hurricane Katrina struck the coast of Mississippi, which affected the Petal area and specifically delayed Venture Sales’ engineer of record from working on the Venture Sales property. In 2006, the City of Petal provided the property access to sewage, which the appellants claim had theretofore been cost-prohibitive. Fordham and Thompson also point to the 2007 national housing market decline and the plummeting of the stock market in 2008, causing the financial markets to freeze. Fordham said he believed that, if Venture Sales would have begun development in 2008 or 2009, the company would now be bankrupt. Finally, Fordham and Thompson contend that the new subdivision regulations passed by the City of Petal in 2007, increasing the required thickness of asphalt, substantially increased the cost of development.
¶ 19. Despite these alleged hindrances, Fordham and Thompson have, during this ten-year period, successfully formed two other LLCs and have developed at least two other subdivisions with around 200 houses, collectively, within twenty-five miles of the subject property. More importantly, though, Fordham and Thompson presented no evidence that Venture Sales would be able to develop the land as intended within the foreseeable future. When asked by the trial court when Venture Sales might be able to begin developing as it had planned, Fordham could not say. Fordham and Thompson admitted that it would take around $8 million to “kick off” construction of the subdivision as planned, and the chancellor found that Venture Sales was currently unable to get additional bank loans or other funding needed to begin development.
¶20. Fordham and Thompson claim that it is reasonably practicable for Venture Sales to continue operating. They argue that Venture Sales’ assets exceed its liabilities, that there has been development along the Highway 42 corridor that runs in *916 front of the Venture Sales property, and that the economy in the City of Petal is improving. In essence, their argument is that the company has the financial means to “weather the storm” and that the economy is improving. However, while Venture Sales currently may be solvent, and while the economy may be improving overall, Fordham and Thompson have not shown that Venture Sales can meet the purpose for which it was formed — developing and selling its property.
¶21. Fordham and Thompson claim that Perkins has blocked Venture Sales from taking advantage of certain “business opportunities,” such as selling the property at a reduced price of $3.5 million, or offering six lots located on the back side of the property for $30,000 each. However, these “business opportunities” were merely ideas from Fordham about how to make use of the property. Fordham and Thompson presented no evidence that individuals were ready to purchase the property, or portions of it, at these prices. Furthermore, as discussed above, they presented no evidence that Venture Sales could develop the property, which is the purpose for which the company was formed.
¶22. In support of their argument, Fordham and Thompson point to two cases, 1545 Ocean Avenue and Arrow, where courts refused to dissolve limited liability companies. However, each of these cases is easily distinguishable from today’s.
¶ 23. In 1545 Ocean Avenue, a limited liability company was formed to purchase a piece of property, rehabilitate an existing building, and build a second building for commercial rental. 1545 Ocean Ave., 72 A.D.3d at 123, 893 N.Y.S.2d 590. One member’s independent construction company unilaterally began working on the construction project, despite protests from the other member. Id at 123-124, 893 N.Y.S.2d 590. However, the protesting member took no other action to stop the work being done on the project. Id at 124, 893 N.Y.S.2d 590. Tension between the members mounted, but work continued on the buildings. Id When the project was only a few weeks away from completion, the protesting member filed a petition for dissolution in the Supreme Court of Suffolk County, New York. Id at 124-125, 893 N.Y.S.2d 590. The lower court granted the petition, but the New York Supreme Court, Appellate Division, reversed. Id at 123, 893 N.Y.S.2d 590.
¶ 24. The appellate court recognized that the dispute between the members had not frustrated the purpose of the LLC. Id at 132, 893 N.Y.S.2d 590. Because the work was all but completed, and because the protesting member tacitly had ratified the continued construction on the project, the court reversed the order of dissolution and dismissed the petition. Id at 132-33, 893 N.Y.S.2d 590.
¶ 25. Unlike the company in 154-5 Ocean Avenue, Venture Sales is not fulfilling the purpose stated in its operating agreement. The company was formed for the purpose of developing and selling its property, and no development has taken place during the more than ten years since the company’s formation. Unlike the project at issue in 1545 Ocean Avenue, there is no evidence that Venture Sales has any plans or the financial wherewithal for any development in the near future, if ever. The only “business opportunities” that the appellants offer are merely their own offers to sell the property. The situation in 1545 Ocean Avenue was substantially different than that of Venture Sales.
¶ 26. In Arrow, the Delaware Chancery Court refused to order the dissolution of a limited liability company based on the petition of a member who was dissatisfied with *917 the direction of the company. Arrow, 2009 WL 1101682. The company, Arrow Investment Advisors, LLC, had been formed only two years prior to the filing of the petition for dissolution. Id. at *1. The petitioning member had been ousted as the company’s CEO. Id. In his petition, the member complained that the company was pursuing strategies that were not aimed toward performing its original business plan. Id. at *3.
¶ 27. The court noted that the company had not enjoyed immediate profitability and had decided to pursue strategies that were not part of its original business plan. Id. at *2. However, the court found that these strategies were still within the confines of the company’s purpose. Id. at *3. The court held that dissolution was improper for “a two-year old LLC with a broad purpose clause [that] has experienced some adversity.” Id.
¶28. Unlike Arrow, Venture Sales is not a relatively new entity. Perkins became a member of Venture Sales in 2000 and has been awaiting development of the property ever since. Furthermore, Perkins does not simply disagree with the strategic choices taken by management. See id. at *3. Perkins petitioned for dissolution because Venture Sales’ purpose— development and sale of commercial and residential property-has never come into fruition and apparently will not in the foreseeable future. Venture Sales is not a “start-up” that has “merely ... not experienced a smooth glide to profitability.” See id. at *2-3. Rather, Venture Sales has existed for more than ten years and has yet to achieve, or even begin fulfilling, its stated purpose.
¶ 29. For the above-stated reasons, we hold that the chancellor did not abuse his discretion by granting the petition for dissolution of Venture Sales. Accordingly, we affirm the chancellor’s judgment.
II. The winding up of Venture Sales
¶ 30. In his order, the chancellor did not make provisions for winding up Venture Sales. Fordham and Thompson argue that the chancellor should have ordered Fordham, as manager of Venture Sales, to proceed with winding up the company in accordance with the MLLCA. Perkins agrees that the MLLCA provides the process for winding up a limited liability company, and does not object to a remand on this issue. Since this issue has not yet been addressed at the chancery court, and since the parties are in agreement that remand is necessary, we remand to the chancery court for winding up the affairs of Venture Sales.
CONCLUSION
¶ 31. The chancellor’s decision to order the dissolution of Venture Sales was not an abuse of discretion. More than ten years after its formation, Venture Sales has not met, and will not meet in the near future, its economic purpose. Substantial evidence exists supporting the chancellor’s determination that it was not reasonably practicable for Venture Sales to carry on business in conformity with its operating agreement. We therefore affirm the chancellor’s order of dissolution and remand for the winding up of Venture Sales.
¶ 32. AFFIRMED AND REMANDED.
CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.

. Title 79, Chapter 29 of the Mississippi Code constitutes the Mississippi Limited Liability Company Act. This chapter was substantially revised in 2010. The revisions, which took effect on January 1, 2011, dealt in part with the process of judicial dissolution of an LLC. Section 79-29-802 was repealed, and Section 79-29-803 was revised and now provides the process for judicial dissolution. However, because this action was filed in 2010, it is governed by the prior version of the statutes. See Miss.Code Ann. § 79-29-1317 (Supp.2011) (stating that revisions do not apply to actions commenced before mandatory application date).

. Perkins originally became acquainted with Fordham when Fordham's church, First Baptist Church of Petal, purchased land from Perkins.