# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-01734-SCT

*B&S MS HOLDINGS, LLC*

*v.*

*JILL LANDRUM*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/2018 |
| TRIAL JUDGE: | HON. ROBERT GEORGE CLARK, III |
| TRIAL COURT ATTORNEYS: | JOHN G. CORLEW |
| | HARRIS H. BARNES, III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN G. CORLEW |
| | LYNN CHAIN WALL |
| ATTORNEYS FOR APPELLEE: | HARRIS H. BARNES, III |
| | JAMES WILLIAMS JANOUSH |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 07/30/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.	In this dispute between members of a limited-liability company, the question before this Court is whether statutory provisions prevent the enforcement of an arbitration provision and waiver contained in the operating agreement of the company. Because the statutory provisions do not control over the terms of the operating agreement, we affirm the trial court's decision to compel arbitration.

## FACTS AND PROCEDURAL HISTORY

¶2.	David and Jill Landrum began to develop land in Livingston, Madison County,

Mississippi, in approximately 2006. David then sought financial assistance from Michael L. Sharpe. Michael invested substantial sums in the business, and his wife, Marna Sharpe, gained a membership interest in the business. On January 27, 2010, Livingston Holdings, LLC (Livingston), a Mississippi limited-liability company, was formed. The original members of the company were Jill, Marna, and Sara E. Williams. Livingston acquired Williams's ownership interests, and Marna later assigned her membership interest to B&S. The development is now known as the Town of Livingston. The current members of Livingston consist of B&S MS Holdings, LLC (B&S), and Jill.

¶3.     An operating agreement was executed effective January 1, 2010. It contained an arbitration provision under article XIV that provided,

> Except for the injunctive relief provided in **Article IX**, any dispute, claim, or controversy in connection with or arising under this Operating Agreement, its construction, existence, interpretation, validity, or any breach hereof, which cannot be amicably settled between the parties, shall be finally and exclusively resolved by arbitration under the Rules of Arbitration of the American Arbitration Association then prevailing . . . . THE PARTIES HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OR CLASS TREATMENT OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH THEREOF, PROVIDED THAT NOTHING IN THIS AGREEMENT SHALL PRECLUDE A PARTY FROM SEEKING TO COMPEL ARBITRATION IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION.

¶4.     On July 25, 2014, a Second Amended and Restated Memorandum of Understanding and Amendment to Operating Agreement was executed. The amendment stated that Marna "ha[d] made and continue[d] to make greater contributions to the Company than Landrum."

Marna and Jill agreed that Marna's excess contributions would be converted to a loan.[1] Therefore, the amendment provided that, after July 26, 2014, Marna's membership interest in the company would be 51 percent and Jill's would be 49 percent until payment in full of the loan and the return of Marna's capital contributions.

¶5. On February 13, 2018, B&S filed a complaint to dissolve Livingston under Mississippi Code Section 79-29-803. B&S alleged that Livingston had become "involved with a purported business turnaround consultant which, through egregious conflict of interest, self dealing, and fraud acquired a dominant influence over Livingston." It stated that consultant Mark Calvert and his company Cascade Capital Group, LLC (Cascade), had acquired the principal debt of Livingston entities, a note and deed of trust to BankPlus with a principal balance of $421,957.94. Cascade allegedly modified the BankPlus note and demanded from Livingston $951,147.12 with an interest rate escalated from the 5.5 percent charged by BankPlus to 12 percent.

¶6. Cascade then filed suit in the United States District Court for the Southern District of Mississippi against Livingston; Chestnut Developers, LLC, a Livingston subsidiary; David Landrum; and Michael Sharpe. Livingston answered the allegations of the complaint and filed its own counterclaim, arguing fraud and self-dealing by Calvert and Cascade. But David answered the lawsuit and admitted all of Cascade's allegations. Additionally, B&S alleged that Jill's counsel demanded that Livingston not pay to defend itself against the Cascade

---

[1]At that time, the principal sum of the loan was $2,325,778.48.

lawsuit.

¶7.     B&S contended in its complaint to dissolve Livingston that

> Nothing could be more graphic than the fact that 'it is not reasonably practicable to carry on the business in conformity with the . . . Operating Agreement' than this disagreement between the 51% member of Livingston that it should recover damages for fraud and void the fraudulent transactions of Calvert/Cascade and the position of the 49% member that Livingston should not seek damages for the fraud committed against it, nor should it seek to void the alleged transactions which led to claims of over $1,300,000.00 against it. Livingston cannot carry on any business absent a recovery from the fraud committed against it. The members of this limited liability company have irreconcilable differences and the Court should dissolve the limited liability company pursuant to the provisions of Miss. Code § 79-29-803(1).

¶8.     In response, Jill filed a motion to dismiss the complaint or, alternatively, to compel arbitration and to stay or dismiss the case.[2] In her response, Jill argued that the operating agreement provided that, "[i]f a quorum is present, the affirmative Majority Vote of the Members shall be the act of the Members . . . ." Under article XIII, section 13.1(a), the operating agreement stated that

> The Company shall be dissolved upon the occurrence of any of the following:
>
> (1) Upon the date specified in the Certificate of Formation filed in the office of the Secretary of State of Mississippi; or
>
> (2) By the affirmative **Majority Vote** of the Members.

No meeting or vote had ever been called with respect to the dissolution of the company. Arbitration also had not been commenced. Jill argued that the parties were bound to the

---

[2]The motion to dismiss is not in the record.

operating agreement and had entered into a valid and binding arbitration provision. Because the claims in B&S's complaint arose under the operating agreement, Jill urged the Court, if it did not dismiss the matter under Rule 12(b) of the Mississippi Rules of Civil Procedure, to dismiss the matter and refer it to arbitration.

¶9.    B&S contended that Mississippi Code Section 79-29-123(3) foreclosed Jill's argument. Section 79-29-123(3) states,

> (3)    Except as provided in this subsection (3), the provisions of this chapter that relate to the matters described in paragraphs (a) through (d) of subsection (1) of this section may be waived, restricted, limited, eliminated or varied by the certificate of formation or operating agreement. In addition to the restrictions set forth in subsections (4) and (5) of this section, the certificate of formation or the operating agreement may not:
> . . . .
>
> (m)    Vary the power of a court to decree dissolution in the circumstances specified in Section 79-29-803(1) . . . .

Miss. Code. Ann. § 79-29-123(3)(m) (Supp. 2019). Section 79-29-803(1) provides that,

> (1)    On application by or for a member, the chancery court for the county in which the principal office of the limited liability company is located, or the Chancery Court of the First Judicial District of Hinds County, Mississippi, if the limited liability company does not have a principal office in this state, may decree dissolution of a limited liability company:
>
> (a)    Whenever it is not reasonably practicable to carry on the business in conformity with the certificate of formation or the operating agreement . . . .

Miss. Code. Ann. § 79-29-803(1)(a) (Rev. 2013).

¶10.    The Madison County Chancery Court found that under Mississippi Code Section 79-29-1211, members of a limited-liability company have a right to agree to arbitration. Section

79-29-1211 provides, in relevant part, that,

> *Except by agreeing to arbitrate* any arbitrable matter in a specified jurisdiction or in this state, a member who is not a manager may not waive its right to maintain a legal action or proceeding in the courts of this state with respect to matters relating to the organization or internal affairs of a limited liability company.

Miss. Code. Ann. § 79-29-1211 (Rev. 2013) (emphasis added). Because the members of Livingston agreed to arbitration in the operating agreement, the trial court ordered the parties to conduct binding arbitration.

## ISSUES

I.      Whether the trial court erred by ordering the parties to submit to arbitration in accordance with the terms of the operating agreement.

II.    Whether judicial dissolution fell outside of the scope of the operating agreement arbitration clause.

## DISCUSSION

¶11.    Valid arbitration agreements are favored under Mississippi law. *Harrison Cty. Commercial Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 949 (Miss. 2013) (citing *Smith Barney, Inc. v. Henry*, 775 So. 2d 709, 713 (Miss. 2002)). "The grant or denial of a motion to compel arbitration is reviewed *de novo*." *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*, 950 So. 2d 170, 173 (Miss. 2007) (internal quotation marks omitted) (quoting *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002))."We will not disturb a chancellor's factual findings 'when supported by substantial evidence unless . . . the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an

6

erroneous legal standard.'" ***Venture Sales, LLC v. Perkins***, 86 So. 3d 910, 913 (Miss. 2012) (quoting ***Ladner v. O'Neill (In re Estate of Davis)***, 42 So. 3d 520, 524 (Miss. 2010)).

**I.      Whether the trial court erred by ordering the parties to submit to arbitration in accordance with the terms of the operating agreement.**

**A.      Reasonable Practicality of Carrying on Business**

¶12.    B&S argued that Mississippi Code Section 79-29-123(3)(m) prohibited an operating agreement from contracting away the power of a court to decree dissolution. It contended that no clause in an operating agreement can take away a limited-liability company member's right to petition the court for judicial dissolution. The trial court disagreed and found that members of a limited-liability company have a right to agree to binding arbitration under Mississippi Code Section 79-29-1211.

¶13.    A limited liability company's "operating agreement is a contract, subject to contract law . . . ." ***Bluewater Logistics, LLC v. Williford***, 55 So. 3d 148, 159 (Miss. 2011). Mississippi Code Section 79-29-123 provides that an operating agreement may not "vary the power of a court to decree dissolution in the circumstances specified in Section 79-29-803(1) . . . ." Miss. Code Ann. § 79-29-123(3)(m) (Supp. 2019). Section 79-29-803 states that a court "*may* decree dissolution of a limited liability company" when "it is not reasonably practicable to carry on the business in conformity with . . . the operating agreement." Miss. Code Ann. § 79-29-803(1)(a) (Rev. 2013) (emphasis added).

¶14.    Although a court may order dissolution of a company, this Court previously has recognized that "[j]udicial dissolution has been described as a remedy extreme in nature, and

7

one that is to be granted sparingly." ***Venture Sales***, 86 So. 3d at 914. In that case, the Court discussed the definition of "'not reasonably practicable' in the context of judicial dissolution" of a limited-liability company. ***Id.*** It concluded, "it is clear that when a limited liability company is not meeting the economic purpose for which it was established, dissolution is appropriate." ***Id.*** at 915. Because the company's operating agreement stated that its purpose was to acquire and develop property and the property at issue remained completely undeveloped more than ten years after the company was formed, this Court found that judicial dissolution was appropriate. ***Id.***

¶15.　　In accordance with ***Venture Sales***, B&S maintained that the trial court was required to make a determination as to whether it was reasonably practicable to carry on the business in conformity with the operating agreement.[3] But Jill asserted that while chancery courts do have authority to order a judicial dissolution, the relevant statutory criteria have not been met in this case. She alleged that B&S had failed to make any allegations to sufficiently show why arbitration would be impracticable. Livingston's operating agreement defined a "majority vote" as "a vote of the Members holding at least fifty one percent (51%) of the Membership Interest then owned by the Members." It also provided that dissolution of the

_____

[3]Livingston's operating agreement stated that

> the purposes of the Company [are] to engage in real estate development, construction and related services directly, or indirectly through subsidiary entities, and any related lawful activity, and to deal in and with any Property of any kind, character or description, whether tangible, real, personal or mixed, and wheresoever located, in or by any lawful way, manner or means.

company shall occur "by the affirmative Majority Vote of the Members." Thus, Jill argues that because B&S holds a 51 percent interest in the company, B&S could have unilaterally dissolved Livingston by simply calling a dissolution vote and exercising its vote in favor of dissolution.

¶16.    The trial court correctly found that members of a Mississippi limited-liability company have a right to agree to binding arbitration and that the members of Livingston agreed to an arbitration provision in the operating agreement. Mississippi Code Section 79-29-1201 specifically states that "[t]he rule that statutes in derogation of the common law are to be strictly construed shall have no application to this chapter." Miss. Code Ann. § 79-29-1201(1) (Rev. 2013). It continues, "[i]t is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements." Miss. Code Ann. § 79-29-1201(2) (Rev. 2013). And as the trial court found, Section 79-29-1211 provides, in relevant part, that

> *Except by agreeing to arbitrate* any arbitrable matter in a specified jurisdiction or in this state, a member who is not a manager may not waive its right to maintain a legal action or proceeding in the courts of this state with respect to matters relating to the organization or internal affairs of a limited liability company.

Miss. Code. Ann. § 79-29-1211 (Rev. 2013) (emphasis added). The members in this case agreed to an arbitration provision in the operating agreement which stated,

> [A]ny dispute, claim, or controversy in connection with or arising under this Operating Agreement, its construction, existence, interpretation, validity, or any breach hereof, which cannot be amicably settled between the parties, shall be finally and exclusively resolved by arbitration under the Rules of

9

Arbitration of the American Arbitration Association then prevailing.

"[T]his Court will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution." *IP Timberlands Operating Co., Ltd. v. Denmiss Corp.*, 726 So. 2d 96, 104 (Miss. 1998). Additionally, "[a]rbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Smith v. Express Check Advance of Miss., LLC*, 153 So. 3d 601, 606 (Miss. 2014) (quoting 9 U.S.C. § 2 (1976)).

¶17.    As the statute states, the parties in this case were free to contract, and this Court must enforce operating agreements. In accordance with the operating agreement, dissolution of the company may occur through the majority vote of the members. B&S did not show that it is unable to comply with the operating agreement's terms and that judicial dissolution was required in this case. Further, although Section 79-29-123 states that an operating agreement may not vary the court's power to decree dissolution in certain circumstances, Section 79-29-803(1) clearly states that a trial court *may* decree dissolution of a limited liability company. Miss. Code Ann. § 79-29-803(1) (Rev. 2013). It does not state that a trial court *must* decree dissolution of the company. Thus, the trial court correctly found that the arbitration provision contained in the operating agreement prevailed.

### B.    Waiver of Judicial Dissolution

¶18.    In addition, Jill argues that regardless of the arbitration agreement, the members each waived their right to seek judicial dissolution under article XVI, section 16.2, of the

operating agreement. That provision provided that "[e]ach Member irrevocably waives during the term of the Company any right that he may have to maintain any action for a decree of dissolution of the Company or for partition with respect to the property of the Company."

¶19. "A court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous." ***Merchs. & Farmers Bank of Kosciusko, Miss. v. State ex rel. Moore***, 651 So. 2d 1060, 1061 (Miss. 1995) (citing ***Humble Oil & Refining Co. v. Standard Oil Co. (Ky.)***, 229 F. Supp. 586 (D.C. Miss. 1964), *rev'd on other grounds by* 363 F.2d 945 (5th Cir. 1966). As Section 79-29-1201 provides, the policy of that chapter is "to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements." Miss. Code Ann. § 79-29-1201(2) (Rev. 2013). B&S clearly and unambiguously agreed to waive its right to maintain an action for judicial dissolution. Accordingly, the trial court correctly ordered the parties to conduct binding arbitration in accordance with the provisions of the operating agreement. Therefore, we affirm the judgment of the trial court.

**II.    Whether judicial dissolution fell outside of the scope of the operating agreement's arbitration clause.**

¶20. In the alternative, B&S argues that even without the prohibition of Section 79-29-123(3) against an operating agreement's contracting away the right of a party to seek judicial dissolution of a limited-liability company, judicial dissolution is outside the scope of the arbitration agreement.

11

¶21. B&S cited as instructive two Georgia cases. In one case, a limited-liability company's operating agreement stated that "[a]ny dispute, controversy or claim arising out of or in connection with, or relating to, this Operating Agreement or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration." *Ga. Rehab. Ctr., Inc. v. Newnan Hosp.*, 658 S.E.2d 737, 738 (Ga. 2008) (internal quotation marks omitted). The operating agreement provided for the dissolution of the company only upon a dissolution notice from a member, the unanimous agreement of all members, or the bankruptcy of a member. *Id.* Because the petition for dissolution was not commenced under the operating agreement but was commenced by Georgia statute, the Georgia court found that the statute provided an independent legal mechanism for dissolution. *Id.* Therefore, the court held that the dissolution did not arise out of or relate to the operating agreement and that the issue did not have to be submitted to arbitration. *Id.*

¶22. In another case, the parties filed a petition for judicial dissolution by statute; the petition provided that "on application by or for a member of a limited liability company, the court may decree dissolution of the company whenever it is not reasonably practicable to carry on the company's business in conformity with the articles of organization or a written operating agreement." *Simmons Family Props., LLLP v. Shelton*, 705 S.E.2d 258, 259 (Ga. Ct. App. 2010). The Georgia court found that the operating agreement did not govern dissolution proceedings initiated under statute; therefore, the dissolution involved did not arise out of or relate to the terms of the operating agreement. *Id.* at 260.

12

¶23.    B&S contends that the case at issue is similar. It argues that the arbitration provision in the operating agreement did not specifically mention dissolution and that the parties had no intention of submitting judicial dissolution to arbitration. However, as discussed above, the parties in this case agreed to waive their right to judicial dissolution in the company's operating agreement. The arbitration provision contained in the operating agreement provided that "any dispute, claim, or controversy in connection with or arising under this Operating Agreement, its construction, existence, interpretation, validity, or any breach hereof, which cannot be amicably settled between the parties, shall be finally and exclusively resolved by arbitration . . . ." Because the parties agreed to waive their right to judicial dissolution and because dissolution of the company by the majority vote of the members is provided for in the operating agreement, dissolution directly falls under the arbitration provision contained in the contract. Therefore, this issue has no merit.

**CONCLUSION**

¶24.    Livingston's operating agreement contained a provision stating that the members expressly waived their right to maintain an action for a decree of dissolution. In addition, the operating agreement contained a binding arbitration provision. Because the dissolution of the company fell within the operating agreement and therefore under the arbitration provision, the trial court did not err by ordering the parties to submit to binding arbitration. Therefore, we affirm the judgment of the trial court.

¶25.    **AFFIRMED.**

13

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶26.   I respectfully dissent. B&S MS Holdings, LLC, the majority member of Livingston Holdings, LLC, filed an application for judicial dissolution of Livingston under Mississippi Code Section 79-29-803(1) (Rev. 2013). Although Livingston's operating agreement contains an arbitration provision, by statute an operating agreement cannot vary the power of the chancery court to decree dissolution when the chancellor finds that it is not reasonably practicable to carry on the business in conformity with the operating agreement under Mississippi Code Section 79-29-803(1). Miss. Code Ann. § 79-29-123(3) (Supp. 2019). The majority's decision to affirm the order for arbitration essentially writes the applicable statute out of existence. Therefore, I would reverse the arbitration order and remand for further proceedings.

¶27.   Livingston was formed under the provisions of the Revised Mississippi Limited Liability Company Act. Miss. Code Ann. §§ 79-29-101-1317 (Rev. 2013 & Supp. 2019). This appeal involves the interplay of portions of Livingston's operating agreement with provisions of the Act. The operating agreement provides that "any dispute, claim, or controversy in connection with or arising under this Operating Agreement" must be resolved by arbitration and that the parties "waive any right to trial by jury . . . of any claim . . . arising out of or relating to this agreement or the breach thereof . . . ." The operating agreement also

14

provides that "[e]ach Member irrevocably waives during the term of the Company any right that he may have to maintain any action for a decree of dissolution of the Company . . . ."

¶28.    Mississippi Code Section 79-29-123(3)(m) says that "the operating agreement may not: . . . [v]ary the power of a court to decree dissolution in the circumstances specified in Section 79-29-803(1) . . . ." Miss. Code Ann. § 79-29-123(3)(m) (Supp. 2019). Section 79-29-803(1)(a) provides,

> (1)    On application by or for a member, the chancery court for the county in which the principal office of the limited liability company is located, or the Chancery Court of the First Judicial District of Hinds County, Mississippi, if the limited liability company does not have a principal office in this state, may decree dissolution of a limited liability company:
>
>     (a)    Whenever it is not reasonably practicable to carry on the business in conformity with the certificate of formation or the operating agreement;

Miss. Code Ann. § 79-29-803(1)(a) (Rev. 2013). Section 79-29-1211 allows arbitration agreements and provides that,

> Except by agreeing to arbitrate any arbitrable matter in a specified jurisdiction or in this state, a member who is not a manager may not waive its right to maintain a legal action or proceeding in the courts of this state with respect to matters relating to the organization or internal affairs of a limited liability company.

Miss. Code Ann. § 79-29-1211 (Rev. 2013).

¶29.    Section 79-29-123(3) and Section 79-29-803(1) say that an operating agreement cannot vary the court's power to dissolve an LLC when "it is not reasonably practicable to carry on the business in conformity with the . . . operating agreement." Miss. Code Ann. §§

15

79-29-123(3)(m), 79-29-803(1)(a). The majority acknowledges that Section 79-29-123(3) does not allow an operating agreement to limit a court's power to decree judicial dissolution under Section 79-29-803(1). Yet inexplicably it finds that the parties to this operating agreement waived their right to seek judicial dissolution under Section 79-29-803(1). Under the plain language of Section 79-29-123(3), the parties cannot waive their right to seek judicial dissolution in the situation identified in Section 79-29-803(1). Therefore, consistent with Section 79-29-123(3), I would hold that the parties' waiver of the right to seek judicial dissolution did not include a waiver of their right to judicial dissolution under the specific circumstance identified in Section 79-29-803(1). Because by law no waiver was allowed, I reject the majority's conclusion that "the parties agreed to waive their right to judicial dissolution [under Section 79-29-803(1)] . . . ." Maj. Op. at ¶ 23.

¶30. The majority relies on Section 79-29-1211, which provides that LLC members may waive their right to sue by agreeing to arbitrate "matters relating to the organization or internal affairs of a limited liability company." Miss. Code Ann. § 79-29-1211. The majority holds that because the law favors arbitration agreements and because this Court respects the right of freedom to contract, the parties validly agreed to arbitrate the request of B&S for dissolution. But the complaint filed by B&S requested judicial dissolution under Section 79-29-803(1). Section 79-29-123(3) says that an operating agreement cannot vary the chancery court's power to decree dissolution under Section 79-29-803(1).

¶31. I would find that the provision for arbitration agreements in Section 79-29-1211 does

16

not abrogate the directive in Section 79-29-123(3) that dissolution under 79-29-803(1) is for the chancery court. When faced with a question of statutory interpretation, this Court's role is to "give effect to the legislative intent." *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992) (citing *Anderson v. Lambert*, 494 So. 2d 370, 372 (Miss. 1986)). We must examine a statute's plain language to discern its meaning. *Id.* If a statute is ambiguous, then the Court should look to principles of construction. *Id.* "[E]ach section of the Code dealing with the same or similar subject matter must be read *in pari materia* . . . ." *Miss. Pub. Serv. Comm'n v. Mun. Energy Agency of Miss.*, 463 So. 2d 1056, 1058 (Miss. 1985) (citing *Atwood Chevrolet-Olds, Inc. v. Aberdeen Mun. Sch. Dist.*, 431 So. 2d 926, 928 (Miss. 1983)). "When statutes are *in pari materia*, although apparently conflicting, they should, if possible, be construed in harmony with each other to give effect to each." *Atwood* , 431 So. 2d at 928 (citing *Lamar Cty. Sch. Bd. v. Saul*, 359 So. 2d 350, 353 (Miss. 1978)).

¶32.    Because Section 79-29-1211 is *in pari materia* with Section 79-29-123(3) and Section 79-29-803(1), these statutes must be construed harmoniously to give effect to each. *Atwood*, 431 So. 2d at 928 (citing *Saul*, 359 So. 2d at 353). Section 79-29-123(3) and Section 79-29-803(1) say that an operating agreement cannot vary the court's power to dissolve an LLC when "it is not reasonably practicable to carry on the business in conformity with the . . . operating agreement." Miss. Code Ann. §§ 79-29-123(3), 79-29-803(1). Section 79-29-1211 provides that members may agree to arbitrate "matters relating to the organization or internal affairs of a limited liability company." Even assuming dissolution is a "matter relating to"

17

an LLC's "organization or internal affairs" that the parties can agree to arbitrate, Section 79-29-123(3) and Section 79-29-803(1) must be given effect. Under those two statutes, members cannot contract to vary a court's power to decree dissolution "[w]henever it is not reasonably practicable to carry on the business in conformity with the certificate of formation or the operating agreement." Miss. Code Ann. §§ 79-29-123(3), 79-29-803(1). Construing Section 79-29-123(3), Section 79-29-803(1), and Section 79-29-1211 harmoniously and giving effect to each yields the conclusion that Section 79-29-1211 does not go so far as to permit members to agree to arbitrate an issue of dissolution lying within the ambit of Section 79-29-803(1). The plain language of the statutes evinces a legislative intent to vest that authority in the chancery court.

¶33. The majority finds also that the complaint filed by B&S to dissolve Livingston is subject to arbitration "because dissolution of the company by the majority vote of the members is provided for in the operating agreement . . . ." Maj. Op. ¶ 23. Certainly it is conceivable that because the operating agreement provides that the company shall be dissolved by the majority vote of its members and because B&S was the majority member, a judicial dissolution might not be warranted. But that is a decision for the chancery court to make under the authority granted in Section 79-29-803(1), which provides that the chancery court "may" decree dissolution when it is not reasonably practicable to carry on the business. Because B&S filed an application for judicial dissolution under Section 79-29-803(1) averring that irreconcilable differences had arisen between Livingston's members and

18

requesting judicial dissolution, it was for the chancery court, not for this Court or for an arbitrator, to adjudicate the merits of the application. Miss. Code Ann. § 79-29-123(3).

¶34.    When Livingston's members chose to organize under the provisions of the Mississippi Limited Liability Company Act, they chose to subject the LLC's doings to all of the statutory provisions governing LLCs. Section 79-29-123(3) prohibits an LLC's operating agreement from varying a court's power to decree dissolution under Section 79-29-803(1). Although Section 79-29-1211 allows LLC members to agree to arbitrate many issues, Section 79-29-123(3) means that members cannot enter into an enforceable agreement to arbitrate the dissolution of an LLC under Section 79-29-803(1), a matter reserved for the chancery court. Because B&S filed an application for judicial dissolution under Section 79-39-803(1), the chancery court erred by sending the request of B&S for judicial dissolution to arbitration. Therefore, I would reverse the judgment and remand the case to the chancery court for further proceedings.

        **COLEMAN, J., JOINS THIS OPINION.**

19