In the Matter of the Dissolution of 47th Road LLC, a New York Limited Liability Company.


705060/16

For Petitioner:
Michael L. Cirrito, Esq.
White, Cirrito & Nally, LLP
Hempstead, New York 11550
For Respondent:
James Costo, Esq.
New York, New York 10007


Timothy J. Dufficy, J.

A dissolution hearing in order to determine whether 47th Road LLC should be dissolved was held before this Court on December 2, 2016 and December 9, 2016.
The Court makes the following findings of fact and conclusions of Law.
FINDINGS OF FACT
This matter, and its companion actions, have a tortured history and continuing 
history of brother against brother.
After witnessing the testimony and demeanor of both James Cortazar and Vincent Cortazar at the dissolution hearing, the Court finds that the testimony of Vincent Cortazar was credible, and that the testimony of James Cortazar was not credible.
47th Rd., LLC is a New York limited liability company, which was established on August 18, 2009 by Vincent Cortazar and James Cortazar. The brothers each own a 50% interest in the company. The sole asset of the company is real property located at 5-19 47th Road, Long Island City, New York, designated as Block 29, Lot 17, in Queens County. The brothers purchased the property in their individual names as joint tenants by deed, dated August 29, 1996. The property was transferred from the brothers as joint tenants to 47th Road LLC. The property consists of a residential, four story walk-up apartment unit with eight separate apartment units occupied by tenants, which have a fair market rental value of approximately $160,000 per year in rent. On August 25, 2009, the company borrowed the sum of $800,000 from Hypothecator Realty Corp. On October 4, 2010, the company took an additional mortgage from the same entity, in the sum of $250,000.
On February 14, 2011, the brothers borrowed the sum of $1,200,000 from Hudson Valley Bank, which is now known as Santander Bank. This loan was secured by a $1,200,000 mortgage on the subject premises. The funds from the mortgage loans, in the approximate amount of $1,000,000, were used to purchase approximately one hundred acres in Rio Del, California. This California property was titled only in the name of James Cortazar. When Vincent Cortazar found out, there was a physically violent confrontation between the brothers. Vincent Cortazar was locked out of the company's day-to-day operations, claiming the property was mismanaged. James Cortazar was collecting the rents from these apartments, while not paying down any of the indebtedness of the mortgage. The Santander mortgage loan matured on March 1, 2016. As a result, all amounts due under the note became due and payable. James Cortazar refused to pay the mortgage. As a result, the property is in foreclosure. He refuses to work with his brother Vincent, to resolve the mortgage. There are numerous outstanding violations on the property and James Cortazar has collected the rents without making repairs, paying the violations, or the mortgage. He apparently does not care that the only asset of the company will be lost to foreclosure. An entity known as 47th Road Funding, Inc. acquired the defaulted loan from Santander Bank for $1,000,000. Vincent Cortazar has attempted to renegotiate a loan extension with 47th Road Funding. However, without his brother's cooperation, which has not been forthcoming, since he is a 50% member of the company, this has been impossible.
At this juncture, this Court notes that, petitioner Vincent Cortazar brought a prior action seeking dissolution, entitled Matter of Vincent Cortazar v James Cortazar and 47th Road, LLC., Index No. 2404/2014. That action was dismissed by Justice Grays, by Order dated September 23, 2014, on the ground that dissolution did not lie due to the lack of demonstration of financial infeasibility required for dissolution under LLCL §702.
In that matter, the respondent herein, James Cortazar, submitted an affidavit, dated April 22, 2014, in opposition to the petitioner's previous petition, in which he averred, in paragraph 35 that "Vincent did enter into various loan commitments, which I did approve." He also averred, in paragraph 41 that "[s]ince I took over management, I have resolved the dispute with the lender and the Subject Property is not in any threat of foreclosure." The lack of any threat of foreclosure to the property, which is the only asset of this limited liability company, and key to the financial feasibility of the company's operation, was the linchpin of Justice Gray's decision. That fact notwithstanding, there was a foreclosure action, entitled Sovereign Bank, N.A. v 47th Road LLC and Cojam Realty, Inc., under Index Number 702920/12, which was discontinued by Notice of Discontinuance, dated June 20, 2016. A copy of the discontinuance was mailed to both 47th Road, LLC and Cojam Realty, at 6 Carman Road, Dix Hills, NY. There is currently a foreclosure lawsuit brought on behalf of the assignee of the bank, which is pending in this Court, entitled 47th Road Funding Inc. v Cojam Realty Inc et al., Index No. 707559/2016, in which the plaintiff seeks to foreclose sums which became due and owing due to the maturity of the subject obligation. The Court further notes that the petitioner has demonstrated that there are numerous violations against the property, in the amount of over $33,000, as well as unpaid taxes, all of which jeopardize the feasability of continuing the corporate existence.
James Cortazar's contention that his brother Vincent was merely an employee or independent contractor is belied by the allegations in a lawsuit, under Index No. 700375/2013, filed February 4, 2013, in which James Cortazar sued Vincent Tomasino Jr., individually and on [*2]behalf of Cojam Realty. The lawsuit arose out of an October 1, 2009 agreement for the purchase of an interest in a limited liability company. The 2009 agreement was signed by both brothers in what appears to be the identical handwriting. Vincent H. Cortazar alone signed that agreement on behalf of both Cojam Realty, Inc. and A-Plus Construction Corporation. He testified that he had power of attorney to act on behalf of his brother James in real estate transactions while his brother was in California. The allegations by James Cortazar that his brother Vincent was an employee and independent contractor of Cojam Realty are belied by the verified allegations in the 2013 lawsuit, as well as the 2009 agreement. In that lawsuit, James Cortazar alleged (paragraph 3 of the Amended Verified Complaint) that "he was an equal partner of The Cortazar Group," and also (paragraph 4), that he "is also a 50% partner and managing shareholder of the Plaintiff Cojam Realty Inc..." Those allegations contradict the testimony of James Cortazar at the hearing. It is unlikely that Vincent Cortazar would forge a verification in a lawsuit in which he was not even the individual plaintiff. In addition, the respondent claims that his attorney at the time, Michael Hartofilis, was aware of the arrangement between the brothers, but curiously failed to produce Mr. Hartofilis, a local attorney, as a witness.
The brothers Cortazar are also involved in a separate derivative action, a Kings County action involving another property, as well as a California action. In this renewed action, the petitioner seeks dissolution of the limited liability company known as 47th Road LLC, to have the affairs of the company wound up pursuant to Limited Liability Company Law (LLCL) §703, to enjoin his brother James Cortazar from transacting any business and exercising any powers with respect to the company, to have this Court appoint a receiver to collect the rents and profits of the company, to appoint a referee to determine the various rights and interests of the members of the company, and to direct James Cortazar to provide an accounting of the company's records of rents received and disbursements paid, including all financial records and documents.
During the hearing, respondent James Cortazar testified that his brother Vincent was named on the deed as a convenience, since he did not make any financial contributions toward the purchase of the subject property. The Court rejects James Cortazar's testimony, and finds that there was a valid deed between the brothers reflecting their contributions to the property. Vincent Cortazar participated by providing sweat equity in furtherance of their partnership, including maintenance work on the property, and managing it; James Cortazar contributed working capital. The respondent also claims that the petitioner fraudulently transferred the property to the limited liability company without his consent. There would be no advantage for him to do so, since they were each 50% owners under the deed as well as under the limited liability company. The limited liability company would benefit both of them by negating personal liability for occurrences at the property. Likewise, the respondent failed to provide testimony or other proof to support his claim that his signature on the operating agreement was forged. This Court is not in a position to make its own handwriting analysis on this issue, and no expert testimony was proffered. Moreover, there would be no benefit derived to the respondent if the operating agreement was not in place, since the LLCL would apply by default. The respondent testified that he had problems with the way his brother managed the property, but not with the $800,000 hard-money loan from Hypothecator Realty Corp. or the $1,200,000 loan from Hudson Valley Bank.
CONCLUSIONS OF LAW
Section 702 of the LLCL provides for dissolution of a limited liability corporation under the following circumstances:
On application by or for a member, the Supreme Court in the judicial district in which the office of the limited liability company is located may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement. A certified copy of the order of dissolution shall be filed by the applicant with the Department of State within 30 days of issuance Under Section 702 of the Limited Liability Company Law ("LLCL"), the Supreme Court in the judicial district in which the office of the company is located may, on application by or for a member, decree dissolution of the company "whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement." LLCL § 702.
The Operating Agreement, in Article II, states only that the company is formed for "any lawful business purpose." The standard operating agreement, in Article 6, provides that the company shall be dissolved and its affairs wound up upon the first to occur of the following: a the latest date on which this company is to dissolve, if any, as set forth in the articles of organization, or by a judicial decree pursuant to section 702 of the New York limited liability company law.
In determining applications for a judicial dissolution of a limited liability company, the court must first look to such company's operating agreement to determine "whether it is or is not reasonably practicable for the limited liability company to continue to carry on its business in conformity with the operating agreement" (Matter of 1545 Ocean Avenue, LLC v Crown Royal Ventures, LLC, 72 AD3d 121 [2d Dept 2010]; see LLCL § 702). Considered a statutory "default provision" for judicial dissolution (see Man Choi Chiu v Chiu, 71 AD3d 646 [2d Dept 2010]), LLCL § 702 is available whenever the court finds that it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement. Appellate case authorities have instructed that the court's initial analysis is one that is contract-based because the statute mandates an examination of the articles and operating agreement to determine the reasonable practicability of carrying on the business in conformity with these governing documents (see Matter of 1545 Ocean Avenue, LLC v Crown Royal Ventures, LLC, supra; see also Matter of Shure v S & S Eatery LLC, 35 Misc 3d 1218(A), 2012WL I52l9l5 (Sup. Ct., Nassau Co., 2012); Matter of Spires v Lighthouse Solutions, LLC,4 Misc 3d 428,436 [Sup. Ct., Monroe Co., 2004]).
Here, the general nature of the stated purpose in the Operating Agreement is vague; hence, it does not assist in determining the reasonable practicability of continuing the business. Normally, the LLCL would operate to fill in the voids (see Flax v Shirian, 44 Misc 3d 1222(A), 3 N.Y.S.3d 284, 2014 NY Misc. LEXIS 3679, 2014 NY Slip Op 51229(U), 2014 WL 4056810 [Sup. Ct. Suffolk Co. 2014]). However, the evidence adduced at the hearing makes it clear that the purpose of the company is to operate an eight-unit residential apartment building in an up and coming area of Queens County.
To successfully petition for the dissolution of a limited liability company under the "not reasonably practicable" standard imposed by LLCL § 702, the petitioning member must [*3]demonstrate, in the context of the terms of the articles of incorporation of the operating agreement, the following: 1) the management of the entity is unable or unwilling to reasonably permit or promote the stated purpose of the entity to be realized or achieved; or 2) continuing the entity is financially unfeasible (see Matter of 1545 Ocean Avenue, LLC., v Crown Royal Ventures, LLC, supra; see also Doyle v Icon, LLC, 103 AD3d 440 [1st Dept 2013]). Disputes between members are alone not sufficient to warrant the exercise of judicial discretion to dissolve an LLC that is operates in a manner within the contemplation of it purposes and objectives as defined in its articles of organization and/or operating agreement (see eg. Matter of Natanel v Cohen, 43 Misc 3d 1217(A), 2013 NY Misc Lexis 2900 *12-13 [Sup. Ct. Kings Co. 2014]). It is only where discord and disputes by and among the members are shown to be inimical to achieving the purpose of the LLC will dissolution under the "not reasonably practicable" standard imposed by LLCL § 702 be considered by the court to be an available remedy to the petitioner (see Matter of 1545 Ocean, supra at 130-132; see also Matter of Sieni v Jamsfab, LLC, 2013 WL 3713604 *5, 2013 NY Misc Lexis 2900 *12-13, 2013 NY Slip Op 31473[ U] *5 [Sup Ct, Suffolk County 2013]; Goldsein v Pikus, 2015 NY Misc. LEXIS 2849, *1, 2015 NY Slip Op 31455(U), 1 [Sup. Ct. NY Co. 2015]).
In the case at bar, the dissension among the parties has driven the company's only asset into foreclosure. There are numerous outstanding violations on the property, and the respondent has collected the rents without making repairs, paying the violations, or the mortgage. There are other lawsuits in this and other states between the protagonists. Due to the violent relationship between the two managers, the company will be unable to achieve its purpose of operating an apartment building. The parties seem willing to permit the building to be foreclosed rather than cooperate with each other in the decision-making process. In short, the Court finds that it is not reasonably practicable to carry on the business (see Matter of Natanel v Cohen, supra; Matter of Sieni v Jamsfab, LLC, supra).
Accordingly, based upon the foregoing, it is
ORDERED, ADJUDGED AND DECREED that 47th ROAD LLC is DISSOLVED; and it is further
ORDERED that petitioner shall cause Articles of Dissolution to be filed within ninety (90) days of the dissolution and commencement of the winding up of 47th Road, LLC; and it is further
ORDERED that petitioner and respondent shall provide a full accounting and report on the business of 47th Road LLC to the Court, counsel for petitioner, and respondent, within thirty (30 ) days of service of a copy of this Order; and it is further
ORDERED that Joseph J. Risi, Esq., of 35-11 36th Street- Suite 404, Long Island City, NY 11106, telephone number: (718) 956-4897, is appointed receiver of the parcel of property at 5-19 47th Road, Queens, New York and of the rents and profits therefrom during the period of winding up the affairs of 47th Road LLC., with the usual powers and duties enjoyed and exercised by Receivers according to the practice of this Court, and of the statutes in such case made and provided; and it is further
ORDERED, that pursuant to the provisions of the General Obligations Law Section 7 — 105, anybody holding any deposits or advances of rental as security under any lease or license agreement affecting space in the Premises affected by this action shall turn same over to the [*4]Temporary Receiver with in five (5) days after said Temporary Receiver shall have been qualified; and thereupon the said Temporary Receiver shall hold such security subject to the disposition there of as shall be provided in an Order of this Court to be made and entered in this action; and it is further
ORDERED, that said Receiver shall take possession of the aforesaid real property and determine all of the debts, liabilities and expenses associated with the maintenance and preservation thereof, and shall pay said debts and liabilities as they come due, and shall have the authority to negotiate, resolve and/or extend the mortgage obligation pending the sale of the aforesaid real property; and it is further
ORDERED, that the said Receiver is hereby authorized, empowered, and directed to demand and take all steps necessary to collect from the tenants of said real property, or from any persons liable therefore, all rents and profits thereof now due and unpaid or here after to become due during the winding up., and said tenants be and hereby are directed to pay over to the Receiver any and all rents now due and unpaid or here after due during the pendency of this action, and all persons in possession, other than lawful tenants are hereby directed to surrender possession to said Receiver, and it is further
ORDERED, that said Receiver is authorized to lease the aforesaid real property, or any part hereof, which is or may become vacant for not less than fair market value, for a term not exceeding the conclusion of the winding up period or one year, whichever is less, or for any longer-term permitted by statute and to keep the aforesaid real property in proper state of repair, insured against loss, by fire or otherwise, including liability insurance, make any expenditures necessary for said purposes, including any necessary business expenses. All repairs shall not exceed $5,000, except with the approval of this court, and it is further
ORDERED, that said Receiver is authorized to pay any taxes, water rates, or assessments now due on the aforesaid real property, or hereafter during the pendency of the winding up period, to institute and continue with legal proceedings as may be necessary for the protection of the recovery of any portion of the aforesaid real property, for the collection of rents and profits, and for the removal of any tenant or other person from the aforesaid real property or any part thereof, and it is further
ORDERED, that said Receiver may retain counsel for the purpose of initiating or continuing any legal proceedings, and it is further
ORDERED, that said Receiver may also, in his discretion, if deemed appropriate and warranted, take over control of the corporation as well as being allowed to direct management and employees so that he may wind down the corporate entity, and it is further,
ORDERED, that any tenants of the aforesaid real property and all persons liable for said rents and profits are hereby enjoined and restrained from paying any rents or profits to any party other than the Receiver, his agents, servants, employees or attorneys, and it is further
ORDERED, that the parties to this action, there designated or representative agents, servants, employees and attorneys, shall provide the Receiver or his designated agent, true and complete copies of all insurance policies, including but not limited to general liability or property damage governing the subject premises, all bank records and/or documents in their actual or constructive possession relating to the rents and profits from the aforesaid real property commencing with the date on which this action was filed until the present, all leases, licenses and [*5]other agreements with tenants or occupants of the aforesaid real property, and all contracts, licenses and leases for equipment and building systems and services, and it is further
ORDERED, that the parties to this action and their representatives are designated agents, servants, employees or attorneys and each of them are hereby enjoined and restrained from collecting any rents or profits of the aforesaid real property, or from any part there of, and from interfering in any manner with said Receiver, and it is further
ORDERED, that said Receiver shall retain all monies that he may receive by virtue of his receivership until further order of this Court, except to the extent that this order expressly authorizes the receiver to pay out same for the maintenance and preservation of the aforesaid real property, and it is further
ORDERED, that in accordance with the provisions of the Uniform Civil Rules for the Supreme Support sections 202.52 (a) and (b) said Receiver shall promptly deposit all monies received by him at the time he receives same in his own name as Temporary Receiver in Signature Bank, 89-36 Sutphin Blvd., 3d Floor, Jamaica, New York 11435, in a segregated checking account or interest-bearing account, identifying the name of this action and no withdrawals shall be made there from except as directed by the Court or on a Draft or Check Signed by the Temporary receiver and countersigned by the surety on his undertaking; the receiver shall furnish the attorneys for the plaintiff and respondent with monthly statements of the receipts and expenditures of the Receivership, together with a photocopy of the monthly statements received from said depository; and it is further
ORDERED, that said Receiver, or any party to this action, at any time and upon proper notice to all parties to the action and the Receiver, may apply to this Court for further or additional instructions and powers whenever such instructions are additional powers shall be deemed necessary in order to enable said Receiver to perform properly and legally the duties of his office or for modification of any of the terms of this order, and it is further
ORDERED, that any attorneys fees to be paid by said Receiver shall not be paid without prior approval of the Court and proper notice to all parties, and it is further
ORDERED, that no fee shall be paid to said Receiver until said Receiver has filed and completed Form USC — 830 in full, whereupon the Court shall award the Receiver compensation based upon statute and the fair and reasonable value of the services rendered in this action, and it is further
ORDERED, that before entering upon the duties of this trust, such Receiver make, execute and deliver and cause to be filed with the Clerk of this County a bond to the People of the State of New York, in the sum of $250,000, with a Fidelity or surety company, as surety, authorized by the laws of the State of New York to transact business, conditioned on the faithful performance of his duties as said Receiver, and also execute and file an Oath that he will faithfully and fairly discharge the trust committed to him, and it is further
ORDERED, that the Receiver shall keep written accounts, itemizing receipts, and authorized expenditures, which accounts shall be open for inspection by the parties to this action, and it is further
ORDERED, that the Receiver, by accepting this appointment, certifies that he is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36) including but not limited to sections 36.2 (c) ("Disqualifications from appointment") and 36.2 (d) ("Limitations on [*6]appointments based upon compensation").
The foregoing constitutes the decision, order, judgment and opinion of the Court.
Dated: February 16, 2017
Timothy J. Dufficy, J.S.C.