Amici v Mazza (2025 NY Slip Op 00259)

Amici v Mazza

2025 NY Slip Op 00259

Decided on January 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 16, 2025

CV-24-0809
[*1]Thomas Amici, Appellant,
v
Edward A. Mazza, Individually and as Member of Mazza and Amici, LLC, et al., Respondents.

Calendar Date:December 11, 2024

Before:Garry, P.J., Lynch, Fisher, Powers and Mackey, JJ.

Hancock Estabrook, LLP, Syracuse (Janet D. Callahan of counsel), for appellant.
Coughlin & Gerhart LLP, Ithaca (Dirk A. Galbraith of counsel), for respondents.

Mackey, J.
Appeal from an order of the Supreme Court (Christopher P. Baker, J.), entered April 9, 2024 in Tompkins County, which granted defendants' motion for summary judgment dismissing the complaint.
In 1986, plaintiff and defendant Edward A. Mazza became business partners, without a formal partnership agreement, as joint owners of real estate purchased and leased as residential rental properties. Plaintiff has a high school degree and works as a contractor, and Mazza is an attorney. As part of the business model, plaintiff performed the day-to-day functions of labor, leasing and maintenance of the rental properties while Mazza performed the executive functions of the business. Ultimately, they acquired 20 residential buildings, many through leads that Mazza generated, with plaintiff inspecting and evaluating the properties prior to purchase. In 2011, plaintiff asked Mazza whether they should consider forming a limited liability company, but acknowledged that he "knew nothing about [them]." Thereafter, in 2012 Mazza formed defendant Mazza and Amici, LLC (hereinafter the LLC) by filing "Articles of Organization of Mazza and Amici, LLC." That document, which Mazza claims was drafted by his father and law partner, Bruno Mazza, was executed by Mazza as "Sole Organizer" and states, among other things, that "[m]anagement of the Company shall be vested in one or more managers." The Articles of Organization contain no mention of the LLC's purpose, no operating agreement has been executed, and there is no written documentation evidencing the terms of the contract between the members or their purpose in creating the LLC. However, there is no dispute that the rental properties were transferred to the LLC and that they have been leased to tenants, as before. Plaintiff claims that he played no role in forming the LLC and that there were no discussions regarding its formation; rather, "Mazza simply had informed [him] that the Partnership had been converted to an LLC and the properties were transferred into the LLC." Plaintiff and Mazza agree that they each own 50% of the business, although other than partnership income tax returns there is nothing in writing to document that.
In 2021 plaintiff, who was 73 years old and in declining health,[FN1] informed Mazza of his desire to retire and to withdraw his half of the business from the LLC, "which had always been [his] understanding." Mazza was unwilling to discuss such a plan, which prompted plaintiff to commence this action to recover damages for, among other things, breach of fiduciary duty and for statutory dissolution of the LLC (see Limited Liability Company Law § 702). In his complaint, plaintiff alleged that Mazza, as a general partner of the partnership that preceded the LLC, had a duty to inform him of the consequences of forming an LLC — specifically, his inability to unilaterally withdraw from or dissolve the LLC — which he failed to do. Plaintiff also asserted that Mazza has engaged in self-dealing and has misappropriated [*2]LLC funds. Defendants served an answer denying the material allegations of the complaint, and opposed the dissolution of the LLC, contending, among other things, that the LLC had been operated in a profitable manner as evidenced by its 2020, 2021 and 2022 tax returns. Following joinder of issue, defendants moved for summary judgment dismissing the complaint on the basis that Mazza did not breach a fiduciary duty and that there has been no showing that it is not reasonably practicable to carry on the business of the LLC. Supreme Court granted defendants' motion and dismissed the complaint. In doing so, Supreme Court acknowledged that there were differing accounts regarding the manner in which the business changed from a partnership to an LLC. Notwithstanding, the court dismissed the cause of action for breach of fiduciary duty. Plaintiff appeals.[FN2]
It is "axiomatic that summary judgment is a drastic remedy and should not be granted where triable issues of fact are raised and cannot be resolved on conflicting affidavits" (Brunetti v Musallam, 11 AD3d 280, 280 [1st Dept 2004]; see Millerton Agway Coop. v Briarcliff Farms, 17 NY2d 57, 61 [1966]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]; Hall v Queensbury Union Free Sch. Dist., 147 AD3d 1249, 1250 [3d Dept 2017]). "It is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact, but rather to identify material triable issues of fact (or point to the lack thereof)" (Vega v Restani Constr. Corp., 18 NY3d 499, 505 [2012] [citation omitted]; see Matter of Suffolk County Dept. of Social Servs. v James M., 83 NY2d 178, 182 [1994]). At the summary judgment stage, evidence is viewed in the light most favorable to the nonmoving party, who is afforded the benefit of every reasonable inference (see Nomura Asset Capital Corp. v Cadwalader, Wickersham & Taft LLP, 26 NY3d 40, 49 [2015]; McKenna v Reale, 137 AD3d 1533, 1534 [3d Dept 2016]). "If it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross-motion" (CPLR 3212 [b]), so long as the "cause of action or issue that is the subject of the motions [is] before the court" (Dunham v Hilco Constr. Co., 89 NY2d 425, 430 [1996]). Because "the Appellate Division is a division of the Supreme Court (see NY Const, art VI, §§ 4, 7) and shares that court's power to search the record[, it is similarly empowered to] award summary judgment to a nonmoving party" (Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106, 111 [1984]; see Rubiano v Kelly, 136 AD3d 780, 782 [2d Dept 2016]; Strawberry Lane v Fraser, 129 AD2d 874, 875 [3d Dept 1987]).
A cause of action for breach of fiduciary duty "requires the existence of a fiduciary relationship, misconduct by the defendants and damages directly caused by the misconduct" (Matter of Testani v Russell & Russell, LLC, 204 AD3d 1260, 1262 [3d Dept [*3]2022]; see Country Club Partners, LLC v Goldman, 79 AD3d 1389, 1391 [3d Dept 2010]; Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker, 56 AD3d 1, 5-6 [1st Dept 2008]). A well-established definition of a fiduciary relationship is a relationship where "confidence is reposed on one side and there is resulting superiority and influence on the other" (Roni LLC v Arfa, 18 NY3d 846, 848 [2011] [internal quotation marks and citations omitted]). There are no precise limits imposed on the scope of relationships that may be considered fiduciary (see Penato v George, 52 AD2d 939, 942 [2d Dept 1976], appeals dismissed 42 NY2d 908 [1977]). Rather, the term encompasses "those informal relations which exist whenever one man trusts in, and relies upon, another" (Braddock v Braddock, 60 AD3d 84, 89 [1st Dept 2009] [internal quotation marks and citation omitted]). To be sure, a fiduciary relationship arises "between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005] [internal quotation marks and citation omitted]). Ascertaining the existence of a fiduciary relationship "inevitably requires a fact-specific inquiry" (Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 561 [2009]). Although not determinative (see United States v Chestman, 947 F2d 551, 568 [2d Cir 1991]), a preexisting relationship between two parties, whether a personal relationship between family members or a prior course of business dealings, may be relevant to the inquiry of whether a fiduciary relationship exists between them (see Loeuis v Grushin, 126 AD3d 761, 764 [2d Dept 2015]; Penato v George, 52 AD2d at 942; Perrone v Amato, 2017 WL 2881136 [ED NY, July 5, 2017, No. CV 09-316 (AKT)]; see also Loevner v Loevner, 81 AD3d 791, 791 [2d Dept 2011]; Braddock v Braddock, 60 AD3d at 88).
In support of their motion for summary judgment dismissing the complaint, defendants submitted an affidavit in which Mazza stated that plaintiff presented the idea of transforming the real estate business from a partnership to a limited liability company. Mazza stated that, although he did not think it would be "much benefit" to the business, his father (and law partner) nonetheless formed the LLC and drafted an operating agreement. Mazza claimed that he did not provide legal counsel in the LLC's formation and stated that his father was the attorney in their office who did that type of work. He further stated that until this action was commenced, he was unfamiliar with the "intricacies of the law restricting a member from dissolving an LLC."
In opposition, plaintiff submitted his affirmation in which he stated that, prior to he and Mazza forming a business relationship, Mazza represented him in an unrelated property transaction. According to plaintiff, sometime in late 2011, he approached Mazza about "Limited Liability Corporations," as he had [*4]noticed other property owners in the area had been registering their rental properties that way. However, he informed Mazza that he "knew nothing about [LLCs]." He averred that while Mazza generally explained the purpose of an LLC, he never informed him of the differences between an LLC and a partnership, including the differences in the rights of partners and LLC members to withdraw or terminate the relationship. In addition, plaintiff stated that he played no role in forming the LLC and that there was never any discussion regarding its formation; rather, Mazza simply informed plaintiff that the partnership had been converted to an LLC and that the properties were transferred into it. According to plaintiff, Mazza never told him that his father, Bruno Mazza, organized the LLC, nor had he ever spoken with Bruno Mazza regarding forming the LLC. He affirmed that at no time prior did he receive a copy of an "Operating Agreement," nor was one ever discussed. According to plaintiff, Mazza, who had always acted as both a partner and attorney for the partnership and/or LLC, never informed him that in the absence of specific provisions in an operating agreement, his ability to withdraw from and/or dissolve the LLC would be extremely limited, in comparison with the ability to withdraw from and dissolve a partnership. In addition to his factual averments, plaintiff also presented the metadata of a drafted, but unsigned, operating agreement for the LLC. The metadata indicates that the draft agreement was saved and modified by "Ed-Optl790" on January 17, 2014, which appears to refer to Edward Mazza, not Bruno Mazza. Plaintiff also submitted evidence raising a question of fact as to whether Mazza misappropriated LLC assets by, among other things, making his wife a full-time employee of the LLC and using LLC assets to pay certain expenses of running his law office.
This evidence, viewed in the light most favorable to plaintiff, presented triable issues of fact as to whether Mazza breached a fiduciary duty owed to plaintiff and whether plaintiff suffered damages as a result. There is no dispute that a fiduciary relationship existed between plaintiff and Mazza before the LLC was formed. The record indeed reflects that plaintiff trusted Mazza, an attorney, to act on his behalf in executive matters related to the partners' real estate business, and that Mazza resultingly acquired influence over plaintiff (see Roni LLC v Arfa, 18 NY3d at 848). The close relationship between the two men, which spanned more than three decades and included Mazza's prior representation of plaintiff, supports this conclusion. And although plaintiff was a skilled and seemingly successful contractor, he admittedly had no knowledge of the legal (and practical) implications of converting a partnership to an LLC and accordingly relied on Mazza's expertise in that area.
In dismissing the complaint, Supreme Court concluded that "even assuming as partners that Mazza owed [plaintiff] a fiduciary [*5]duty . . . there is no evidence that Mazza engaged in any misconduct. He only formed the LLC after [plaintiff] raised the possibility of doing so, and there is no evidence that he did so to harm [plaintiff's] interests . . . . Defendant's submissions further establish that plaintiff has not suffered any damages, as the business has remained highly profitable." These conclusions bespeak issue determination, not issue finding. Had plaintiff been properly informed that it would be difficult — if not impossible — to terminate his business relationship with Mazza and expropriate his share of the partnership assets, he then could have made an informed decision as to whether it was prudent to tie the properties up in an LLC. We find that Supreme Court improperly resolved material issues of fact in favor of defendants. Accordingly, defendants' motion for summary judgment should have been denied as to plaintiff's first cause of action for breach of fiduciary duty.
We turn next to plaintiff's sixth cause of action, in which he seeks statutory dissolution of the LLC. Limited Liability Company Law § 702 provides that "the supreme court . . . may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement." Although an alleged "deadlock" between the members of a limited liability company will not necessarily render it impracticable for the company to carry on its business (see Matter of 1545 Ocean Ave., LLC, 72 AD3d 121, 125 [2d Dept 2010]), upon careful review of the record we find that it does in the case at bar. Here, although Mazza filed Articles of Organization for the LLC, no operating agreement was ever executed and no manager has ever been appointed by the members.[FN3] This is critical, as the Articles of Organization provide that "[m]anagement of the Company shall be vested in one or more managers" and that "[n]o member shall have authority to act for the Company solely by virtue of being a member." Certainly, plaintiff and Mazza are deadlocked, with plaintiff wanting to dissolve the LLC and Mazza wanting it to operate. However, as neither of them has legal authority to act on behalf of the LLC, we find that it is not reasonably practicable for the LLC to carry on its business. This is in contrast to the circumstances presented in Matter of 1545 Ocean Ave., LLC, where there was an operating agreement in which the members appointed two managers to operate the business and where there were "no allegation[s] of fraud" (id. at 125; compare Matter of Extreme Wireless, 299 AD2d 549, 550 [2d Dept 2002]). Although Mazza has continued to lease the properties, file income tax returns, and take other actions ostensibly on behalf of the LLC, he clearly lacks any legal authority for doing so. Accordingly, upon searching the record we direct the entry of summary judgment in favor of plaintiff on his sixth cause of action for statutory dissolution [*6]of the LLC, pursuant to Limited Liability Company Law § 702. This renders plaintiff's arguments regarding his fourth, fifth, seventh and eighth causes of action, in which he seeks recission or dissolution of the LLC under a variety of alternative theories, academic.
Garry, P.J., Lynch, Fisher and Powers, JJ., concur.
ORDERED that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as dismissed plaintiff's first and sixth causes of action; motion denied as to the same and plaintiff is granted summary judgment on his sixth cause of action for statutory dissolution of Mazza and Amici, LLC; and, as so modified, affirmed.

Footnotes

Footnote 1: The record reflects that plaintiff has recently been diagnosed with terminal pancreatic cancer.

Footnote 2: Although plaintiff pleaded eight causes of action, he limits his argument to his first, for breach of fiduciary duty, and to his fourth through eighth, wherein he seeks various remedies. Accordingly, plaintiff's remaining causes of action are deemed abandoned (see Matter of Ryan, 226 AD3d 1183, 1185 n 2 [3d Dept 2024]).

Footnote 3: No document has ever been executed concerning membership in the LLC, although the parties agree that they each hold a 50% membership interest.